ALLEN F. HOOTS AND WIFE, SALLIE B. HOOTS v. H. R. CALAWAY AND WIFE, ALICE B. CALAWAY

No. 7221SC445

(Filed 2 August 1972)

1. Evidence § 32— memorandum of sale — parol evidence

Where a memorandum introduced in evidence stated that the sales price of two farms was $110,000 and that the farms contained "400 acres more or less," the parol evidence rule did not preclude plaintiffs' evidence that defendant had agreed orally on a sales price of $275 per acre for a guaranteed 400 acres and had agreed orally to refund to plaintiffs $275 per acre for any shortage of acreage, the memorandum itself and defendant's evidence having established that the parties did not intend to incorporate their entire agreement in the memorandum, and plaintiffs' evidence not having contradicted the memorandum.

2. Rules of Civil Procedure § 50— erroneous judgment NOV — reinstatement of jury verdict

Where the appellate court concludes that the trial court properly denied defendant's motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence, and that the trial court erred in the allowance of defendant's motion for judgment notwithstanding the verdict, the cause will be remanded for entry of judgment on the verdict rendered by the jury. G.S. 1A-1, Rule 50.

Judge VAUGHN dissents.

APPEAL by plaintiffs from *Long, Judge,* 10 January 1972 Session, Superior Court, FORSYTH County.

Plaintiffs allege that prior to 2 July 1968, they entered into negotiations with defendant H. R. Calaway (Calaway) for the purchase of certain farm land then owned by defendants; that Calaway represented that all of the tracts contained a total of 400 acres and guaranteed the tracts to contain a total of 400 acres within one acre difference; that in the event the tracts contained less than 400 acres, the purchase price would be reduced or refunded by defendants in an amount equal to $275 per acre multiplied by the difference between actual acreage in the tracts and the 400 acres represented by defendants to be in said tracts; that plaintiffs and Calaway agreed upon a purchase price of $275 per acre for a total acreage of 400 acres; that pursuant to the agreement plaintiffs gave Calaway a check for $30,000 and their five promissory notes totalling $80,000 which notes were secured by a purchase money deed of trust conveying the farm lands purchased and took a deed conveying

the lands; that subsequently plaintiffs discovered there was an acreage deficiency of 42 acres; that they are entitled to a reduction in purchase price or a refund of $11,550 plus the interest paid on that amount of $1,155 and interest on the overpayment of interest.

Defendants answered admitting the sale and purchase of the land for $110,000, but denying a per acre agreement and denying any agreement to refund or reduce the purchase price by $275 per acre of deficiency under 400 acres.

At trial the court allowed defendant's motion for directed verdict as to Alice B. Calaway, and plaintiffs do not appeal from that ruling.

At the end of plaintiffs' evidence and again at the end of all the evidence the remaining defendant moved for a directed verdict. The motion was denied and the matter was submitted to the jury. The jury found that the defendant contracted with plaintiffs to sell the land on a per acre basis as alleged in the complaint and that the acreage was deficient by 42 acres. Upon the coming in of the verdict, the court set aside and vacated the verdict, granted defendant's motion for judgment notwithstanding the verdict, granted defendant's motion for directed verdict, dismissed the action with prejudice, and denied plaintiffs' alternative motion for a new trial. Plaintiffs appealed.

*Booe, Mitchell, Goodson and Shugart, by William S. Mitchell and Wayne C. Shugart, for plaintiff appellants.*

*White and Crumpler, by James G. White and Michael J. Lewis, for defendant appellees.*

MORRIS, Judge.

Plaintiff, Allen Hoots, testified, out of the presence of the jury, with respect to: Calaway's offer to sell the land for $300 per acre or $120,000 and his counter offer of $275 per acre or $110,000 which was accepted by Calaway; Calaway's guarantee of 400 acres and agreement to refund at the rate of $275 per acre if there was any deficiency in acreage; his payment to Calaway of $500 as good faith money and a meeting a few days thereafter at which $30,000 was paid as a down payment; and a memorandum of the transaction which was prepared

by Calaway's son, signed by Calaway and given to plaintiff Allen Hoots. Defendant objected to testimony of the alleged agreement as to acreage on the ground that it violated the parol evidence rule. The record contains no ruling by the court but it is obvious the court ruled it admissible because the testimony continued before the jury in the same vein.

Plaintiffs' evidence tended to show: Plaintiff, Allen Hoots (Hoots), approached Calaway with respect to purchasing two farms owned by defendants. Calaway offered to sell them for $300 per acre or a total of $120,000. Hoots offered to pay $275 per acre or a total of $110,000. This offer was accepted by Calaway who guaranteed that the two farms contained a total of 400 acres. Hoots gave Calaway a check for $500 "for good faith." A few days later, they met at the farm and with Mr. Cecil Robertson, who worked for Calaway, went in a jeep over both farms for the purpose of showing Hoots the boundary lines and corners. Coming back from "looking at the northwest corner up the branch on the big farm," Hoots asked Calaway how he wanted to handle the transaction in the event of any shortage in the land and whether he wanted to go to a lawyer and draw up an agreement. Calaway replied there was only one way to handle it and that was the same way he had handled the piece of land they just looked at, the upper tract. He said he bought it from Mr. Lester Riley and thought he was getting 77 acres called for by the deed. He later had it surveyed and it was only 65 acres; that Riley brought the money back and gave it to him. Calaway said that was the only way to handle this deal—in the event there is a shortage, he would refund to Hoots at the rate of $275 per acre. This testimony came in before the jury without objection. They returned to the house, and Calaway gave Hoots some "maps and plots of the farm." They agreed to meet Saturday for the payment of the down payment. On Saturday Calaway brought his son, a lawyer. The lawyer, in his own handwriting, prepared a memorandum which Calaway signed and this was delivered to Hoots. The memorandum is as follows:

Hoots v. Calaway

"North Carolina          Memorandum of Sale
Davie County

H. R. Calaway — Seller
Allen F. Hoots—Buyer

Farm
Total Sales Price        110,000.00
    Down payment      30,000.00
    Time Balance      80,000.00
    Financed 5 years              16,000.00 annually
    Interest 5%

Notes as follows:

| | dated | interest | due | interest payable |
|---|---|---|---|---|
| Note 1 | July 1, 1968 | 5% | July 1, 1969 | July 1, 1969 & |
| Note 2 | July 1, 1968 | 5% | July 1, 1970 | on July 1 of |
| Note 3 | July 1, 1968 | 5% | July 1, 1971 | each year till |
| Note 4 | July 1, 1968 | 5% | July 1, 1972 | all notes paid |
| Note 5 | July 1, 1968 | 5% | July 1, 1973 | in full — |

Default in one cause others to fall due —

escrow priviledge (sic) re substitution of collateral
to clear title —

if notes carried over interest is 6%

purchase money mortgage—release if sell
                65 acre lester place —

Received of Allen F. Hoots the sum of $30,000.00
as down payment on purchase price of
2 farms in Advance, N. C.   (400 acres more or less).
The total price of farm is $110,000.00.   The
balance of $80,000.00 on purchase price
will be financed for 5 years at 5% interest.
The notes, deed of trust, and deed will
be executed on July 1, 1968 or as soon
thereafter as attorneys for both parties
hereto can complete arrangements.

Allen F. Hoots                    H. R. Calaway
                           Signed H. R. Calaway"

Hoots gave Calaway his check for $30,000 payable to H. R. and Alice Calaway. They then discussed the personal property involved in the transaction and agreed to meet at Calaway's office "as soon as the papers could be drawn up." They did so meet, with all parties present, and the plaintiffs executed the notes and deed of trust, and defendant executed and delivered a deed conveying to plaintiffs 400 acres, "more or less." The deed, deed of trust and notes all were dated 2 July 1968. At the same time, the parties signed a contract with respect to some of the personal property involved in the transaction. Some eleven months later Hoots had the farm surveyed, and the survey revealed that there was a deficiency in acreage of 42 acres. Plaintiff testified the memo of the transaction was not intended to contain the entire agreement and did not contain the entire agreement.

Defendant's evidence tended to show that there was no per acre agreement and no agreement to refund. Both Calaway and his son testified that the memorandum prepared by the son did not and was not intended to contain the entire transaction but was for the purpose of binding Calaway and assisting the son in the drafting of instruments to close the transaction. Defendant's evidence tended to show that Hoots was given maps of the property and was taken over the property to see the lines; that the surveys he had made revealed over 400 acres in the two farms. Robertson testified he did not hear any conversation with respect to acreage. Calaway testified he agreed to sell the land for $110,000 and no per acre discussion was had.

On appeal defendant appellees contend that the court's rulings were correct because the evidence with respect to a per acre agreement and refund for shortage of acreage on a per acre basis was not admissible in violation of the parol evidence rule, and plaintiffs are bound by the written memorandum accepted by Hoots and kept by him for some eleven months without requesting any change in it. This appears to be the view of the trial judge. In allowing the defendant's motion the court said:

"Gentlemen, as you may know, at the end of the evidence in this case I was tempted to direct a verdict, but we had so much time and energy invested in the case I wanted to submit the case to the jury in the event it would be er-

roneous to direct a verdict so there would be an alternate verdict which might prevent the retrial of the case.

I am still of the opinion that the verdict should have been directed; that though the plaintiff did not sign the memorandum, that he took it, kept it, took a deed drawn in those terms and did not complain until some eleven months later; that under those circumstances the plaintiff was not entitled to introduce evidence as to a per acre contract. For that reason, I will enter judgment notwithstanding the verdict, and hopefully it could be resolved without another trial."

[1] We agree that determination of this appeal rests upon application of the parol evidence rule.

"The parol evidence rule, as customarily phrased, prohibits the admission of parol evidence to vary, add to, or contradict a written instrument. Notwithstanding this mode of expression, the rule is in reality not one of evidence but of substantive law. It does not place restrictions on the manner of proving a fact in issue, but declares certain facts to be legally ineffective and therefore not provable at all. . . .

Translated into the language of the substantive law, the parol evidence rule may be expressed thus: Any or all parts of a transaction prior to or contemporaneous with a writing *intended to record them finally* are superseded and made legally ineffective by the writing. The execution of the final writing may be termed the 'integration' of the transaction. By it all prior and contemporaneous negotiations or agreements, whether oral or written, are 'merged' into the writing, which thus becomes the exclusive source of the parties' rights and obligations with respect to the particular transaction or the part thereof intended to be covered by it." (Emphasis supplied.) Stansbury, N.C. Evidence 2d, § 251, pp. 603-605.

The memorandum here certainly did not contain a merger clause. The words "escrow priviledge (sic) re substitution of collateral to clear title" obviously do not comprise the entire agreement as to that detail. Nor do the words "purchase money mortgage—release if sell 65 acre lester place" indicate an entire agreement. Calaway testified that the agreement was not a

complete agreement and that "there were several things we didn't put in it." Calaway's son testified, "[T]here were various things that had to be done in addition to what is in this memorandum." Also indicative of the fact that this was not an integration of the transaction is the provision included in the agreement with respect to the personal property that Hoots would not cut any timber on the land until the notes were paid in full. The instrument itself and the evidence of defendant Calaway, we think, leave no doubt but that this memorandum was not intended to reduce to writing the entire agreement of the parties.

The North Carolina position on the parol evidence rule is stated in *Stern v. Benbow,* 151 N.C. 460, 66 S.E. 445 (1909). There plaintiff brought an action for the reformation of an option agreement, entered into between plaintiff and defendant giving plaintiff an option to purchase certain lands, to make it speak the truth by inserting a guarantee alleged to have been given by defendant that the tract contained 100 acres. There was evidence that defendant had advertised the land for sale as containing 108 acres and had, in a personal interview with plaintiff, guaranteed that it contained 100 acres. The acreage was actually 78.03 acres. Defendant denied that he had guaranteed the number of acres and denied that anything was omitted from the contract. The jury found for plaintiff. In affirming the trial court, the Supreme Court said:

> "When a contract is reduced to writing, parol evidence cannot be admitted, to vary, add to, or contradict the same. But when a part of the contract is in parol and part in writing, the parol part can be proven if it does not contradict or change that which is written. *Nissen v. Mining Co.,* 104 N.C., 310, and citation in annotated edition.

> It is true, also, that an agreement for the conveyance of the land is not binding unless reduced to writing and signed by the party to be charged; but a guarantee of the number of acres, like the receipt of the purchase-money or recital of the consideration, is not required to be in writing. *Sherrill v. Hagan,* 92 N.C., 349; *McGee v. Craven,* 106 N.C., 356; *Currie v. Hawkins,* 118 N.C., 595; *Quinn v. Sexton,* 125 N.C., 452; *Brown v. Hobbs,* 147 N.C., 77." 151 N.C., at p. 462. See also *Buie v. Kennedy,* 164 N.C. 290, 80 S.E. 445 (1913).

In our opinion the evidence submitted by plaintiffs did not contradict the memorandum. We see nothing in the evidence which would make co-existence of the written agreement and the oral agreement impossible. We think it was properly a question for the jury as to whether the alleged oral agreement was made. The jury found that it was.

Cases cited by defendant calling for the application of the rule of caveat emptor are cases where the agreement was for bulk sale with no guarantee of acreage. *Galloway v. Goolsby,* 176 N.C. 635, 97 S.E. 617 (1918), relied on by defendant, is distinguishable. There the agreement was full and complete, executed by all parties, and contained a description of the land "containing about 97 acres. The price of the land is $700." It further provided for deferred payments, prepayment privilege, provision in event of default, provisions for delivery of deed upon completion of payments, provision for possession, and provision for the collection of rents and crops. The per acre agreement was set up as a defense and no counterclaim was filed.

[2] We conclude that the court properly denied defendant's motions for directed verdict at the close of plaintiffs' evidence and at the close of all the evidence. The allowing of the motion for judgment notwithstanding the verdict constituted error. The jury verdict is reinstated and the cause is remanded to the Superior Court for the entry of judgment on the verdict rendered by the jury. G.S. 1A-1, Rule 50; *Dobson v. Masonite Corporation,* 359 F. 2d 921 (5th Cir. 1966) ; 5A Moore's Federal Practice, § 50.14, p. 2383.

Reversed and remanded.

Judge GRAHAM concurs.

Judge VAUGHN dissents.