ALLEN F. HOOTS AND WIFE, SALLIE B. HOOTS v. H. R. CALAWAY
AND WIFE, ALICE B. CALAWAY

No. 44

(Filed 26 January 1973)

1. Contracts § 5; Evidence § 32— part of contract in parol and part in writing

When part of a contract is in parol and part in writing, the parol part can be proven if it does not contradict or change that which is written.

2. Frauds, Statute of § 7; Vendor and Purchaser § 1— oral guarantee of acreage

A guarantee of the number of acres to be conveyed is not required to be in writing.

3. Evidence § 32— memorandum of sale of realty — parol evidence — guarantee of acreage

Where the evidence established that the parties did not intend to incorporate their entire agreement in a memorandum of sale stating that the sales price of two farms was $110,000 and that the farms contained 400 acres, the parol evidence rule did not preclude plaintiffs' evidence that defendant had agreed orally on a sales price of $275 per acre for a guaranteed 400 acres and had agreed orally to refund to plaintiffs $275 per acre for any shortage of acreage, since the

alleged oral agreement was not in conflict with any of the provisions of the memorandum of sale.

**4. Rules of Civil Procedure § 50—allowance of judgment n.o.v.—ruling on alternate motion for new trial**

Even though the trial court allows a motion for judgment n.o.v., the court must also rule on an alternative motion for a new trial so that a party can appeal conditionally from an adverse ruling on the alternate motion. G.S. 1A-1, Rule 50.

APPEAL by defendant H. R. Calaway under G.S. 7A-30(2) from a decision of the Court of Appeals which reversed the judgment *non obstante veredicto* entered by *Long, J.,* at the 10 January 1972 Session of FORSYTH Superior Court, reinstated the verdict of the jury and remanded the cause to the superior court for the entry of judgment on the verdict.

Plaintiffs alleged they agreed to purchase from defendants at $275 per acre certain tracts of land in Davie County, North Carolina; that defendant H. R. Calaway represented and guaranteed to plaintiffs that the tracts contained a total of 400 acres and that, if in fact they contained less than 400 acres, the purchase price would be reduced or refunded by an amount equal to $275 per acre multiplied by the difference between the actual acreage and the 400 acres represented by defendants to be in the tracts; that the tracts were conveyed by defendants to plaintiffs by deed dated 2 July 1968 at the purchase price of $110,000 based on 400 acres at $275 per acre; and that plaintiffs made a down payment of $30,000 in cash and executed five balance purchase-price notes dated 1 July 1968, each for $16,000, bearing interest at 5% per annum, due on the 1st of July in each of the years 1969, 1970, 1971, 1972 and 1973 and secured payment thereof by a deed of trust on the tracts to Lester P. Martin, Jr., Trustee.

Plaintiffs further alleged that "[s]ome months subsequent to July, 1968, plaintiffs learned that the aforesaid real estate did not in fact contain 400 acres, but rather contained only 358 acres"; and that, on account of the deficiency of 42 acres, plaintiffs were entitled to a reduction or refund in the amount of $11,550 and in addition a credit of $1,155, the amount of the interest plaintiff had paid on $11,550 for the years ending 1 July 1969 and 1 July 1970.

Plaintiffs alleged separately three alternative claims (bases) for the relief sought: (1) Right to recover for over-

Hoots v. Calaway

payment on account of guarantee of acreage; (2) breach of warranty clause in deed; (3) false and fraudulent representations as to the acreage made by defendant H. R. Calaway.

Answering, defendants denied all of plaintiffs' essential allegations, alleging that the tracts sold and conveyed by defendants to plaintiffs consisted of two farms, the lines and corners of which were well known to plaintiffs; and that the writings constituted the entire contract between the parties. Defendants expressly pleaded the statute of frauds, G.S. 22-2, and the parol evidence rule, in bar of plaintiffs' right to recover on any alleged parol agreement.

Plaintiffs elected to proceed only on their first claim for relief, abandoning their second and third claims.

Evidence was offered by plaintiffs and by defendants.

The evidence offered by plaintiffs included testimony of plaintiff Allen F. Hoots (Hoots) to this effect: When approached by Hoots and asked what he would take for his farms, defendant H. R. Calaway (Calaway) replied: "$300 an acre, or $120,000." With reference to the acreage, Calaway said "that he had 400 acres that he could guarantee [Hoots] was there," and added: "I've got 400 acres. There might be a half acre over or an acre, but forget that, I've got 400 acres that I know is there." Hoots protested that this price was too high and said, "I will give you $275 an acre, which would be a total of $110,000." Referring to this offer, Calaway, after figuring a bit, said: "I believe I'll take it." Hoots replied: "All right, Mr. Calaway." The land involved consists of two farms in Davie County. The larger farm is on the Yadkin River and is about two and one-half miles east of Advance, where Hoots and Calaway had their first conversation. The smaller farm is located about two and one-half miles west of Advance.

On the Wednesday following their conversation in Advance, Hoots and Calaway went over both farms. The lines and corners of each farm were pointed out to Hoots. Their tour of the farm was made in a Jeep operated by Cecil Robertson, a worker on Calaway's farm(s).

We quote below a portion of the testimony of Hoots, viz: "So we went back to the other farm. He carried me all over it, showed me where the boundaries were, where the fences and gates and buildings were on it, and so forth. And we were

coming back from looking at the northwest corner up the branch on the big farm, the one east of Advance, and when we come through the bridge, coming under the bridge there, why I said to Mr. Calaway, I says, 'Mr. Calaway, now, how do we want to handle this in the event of any shortage in this land? How should we handle it? Do you want to go to a lawyer and draw up an agreement? Or, how is the best way? Or, how had you rather handle it?' And he says, 'There isn't but one way to handle it, and that is to handle it the same way that I handled this piece of land we just looked at, the upper tract.' He says, 'I bought it from Mr. Lester Riley, and the deed called for 77 acres, and when I bought it, I thought I was getting 77 acres,' and he said, 'I paid him for the land and . . . at a later date I had it surveyed and it was only 65 acres, and . . . he had to bring the money back, or he did bring the money back and give it to me . . . it liked to have killed him, but he did do it, and . . . that's the only way to handle this deal. . . . In the event there is a shortage, a shortage in the acreage, why I will refund your money at the rate of $275 per acre.' "

After Calaway had shown Hoots the boundaries around the farms, they went "to the house." There Calaway got out "some maps or plots" and "laid them out on the table" and showed Hoots the boundaries all around the farm. At that time, Calaway said: "Now, here is what you get. Here is the amount of acreage. There is 400 acres in the total thing, in the total plot." After pointing out the lines Calaway said: "This is the boundary. That is it." Hoots testified: "And the plot showed the amount of land that he had said was there, so I accepted his word for it as being there." It was agreed that they would meet the following Saturday at which time they would work out the details and Hoots would make the down payment.

On the following Saturday, 29 June 1968, Hoots and his son, Gene Hoots, and Calaway and his lawyer son, Stephen Calaway, met at the riverside farm. On that occasion, Hoots delivered his check for $30,000 payable to H. R. & Alice B. Calaway as down payment on the purchase price of $110,000. Stephen Calaway drafted in longhand on a yellow legal pad a document entitled "Memorandum of Sale" and read it over to Hoots, Hoots's son, Gene, and to Calaway. The "Memorandum of Sale," which was signed by Calaway but not by Hoots, is quoted in full below:

Hoots v. Calaway

---

"North Carolina                    Memorandum of Sale
Davie County

H. R. Calaway — Seller
Allen F. Hoots — Buyer

Farm
Total Sales Price        110,000.00
   Down payment          30,000.00
   Time Balance          80,000.00
   Financed 5 years              16,000.00 annually
   Interest 5%

     Notes as follows:

              dated        interest     due        interest payable
Note 1   July 1, 1968   5%   July 1, 1969   July 1, 1969 &
Note 2   July 1, 1968   5%   July 1, 1970   on July 1 of
Note 3   July 1, 1968   5%   July 1, 1971   each year till
Note 4   July 1, 1968   5%   July 1, 1972   all notes paid
Note 5   July 1, 1968   5%   July 1, 1973   in full —

Default in one cause others to fall due —

escrow priviledge [sic] re substitution of collateral
to clear title —
if notes carried over interest to 6% -
purchase money mortgage—release if sell
                        65 acre lester place —

Received of Allen F. Hoots the sum of $30,000.00
as down payment on purchase price of
2 farms in Advance, N. C. (400 acres more or less).
The total price of farm is $110,000.00. The
balance of $80,000.00 on purchase price
will be financed for 5 years at 5% interest.
The notes, deed of trust, and deed will
be executed on July 1, 1968 or as soon
thereafter as attorneys for both parties
hereto can complete arrangements.

*Allen F. Hoots                    *H. R. Calaway
[No signature]                  Signed H. R. Calaway"

[*   Handwriting of Stephen Calaway.]

When asked whether he had any discussion with Calaway concerning the "65-acre Lester place," Hoots testified: "Yes. I told him when I was buying this that I probably would have

to sell the 65 acres, or would need to sell the 65-acre tract; and he says, 'All right. If you want to sell it, I'll give you escrow privileges to go ahead and sell it for the purchase price,' or 'The price of $275 per acre will be applied on the notes with escrow privileges that will go towards paying off your notes, the total price.' "

At their meeting on 29 June 1968, the "Memorandum of Sale" and the keys to the buildings on the farms, were delivered to Hoots. It was agreed that the transaction was to be completed the following Tuesday.

The transaction was closed on Tuesday, 2 July 1968, at which time the following documents were executed and delivered: (1) Deed dated 2 July 1968 from Harley Robert Calaway and wife, Alice Ball Calaway, to Allen F. Hoots and wife, Sallie B. Hoots. This deed recites a consideration "of TEN DOLLARS AND OTHER VALUABLE CONSIDERATIONS ($10.00 ovc)." The description consists of nine separately described tracts of land. (2) Deed of trust dated 2 July 1968 from Allen F. Hoots and wife, Sallie B. Hoots, to Lester P. Martin, Jr., Trustee, which conveys the identical land described in the Calaway-Hoots deed, securing the payment of five notes, each for $16,000, bearing interest at the rate of 5% per annum, payable on the second day of July in the years 1969, 1970, 1971, 1972 and 1973, respectively. (3) The five notes described in and secured by the deed of trust to Lester P. Martin, Trustee.

Additional evidence offered by plaintiffs tends to show that Hoots had the property surveyed by Franklin Surveying Company in May-June 1968. The survey he had made disclosed that the riverside farm contained 296.41 acres or 296.29 acres, depending upon the method of computation, and that the smaller farm contained 61.00 acres or 61.02 acres.

With reference to payments, Hoots testified (at the 10 January 1972 Session) that three of the $16,000 notes had been paid and that the last two had not been paid. His testimony is silent as to whether *plaintiffs* had paid any one or more of the three notes which had been paid.

Neither the deed nor any other writing contained an agreement to the effect that the property was sold and conveyed under a contract providing for a refund if it turned out that the actual acreage was less than 400 acres. The deed of trust

contained no provision relating to the release therefrom of the "65-acre Lester place" upon payment of $275.00 per acre or otherwise.

The testimony of Hoots indicates he had sold the property which he purchased from the Calaways. However, his testimony is silent as to when, to whom, and upon what terms the property had been sold.

Of the nine tracts described separately in the Calaway-Hoots deed, eight are portions of the larger (riverside) farm. The ninth tract is the smaller farm. Immediately following the description by metes and bounds of the ninth tract are the words, "containing 79½ acres, more or less." The ninth tract is also described as being Lot No. 11 as shown on a map of the E. E. Vogler property. A portion of the ninth tract described by metes and bounds and referred to as containing "1.1 acre, more or less," was excepted from the conveyance. The total of all acreages referred to in the descriptions of the nine tracts, after deducting excepted acreages, is 411.63 acres, more or less. Hoots had been advised that the ninth tract contained approximately 65 acres.

The evidence offered by defendants included testimony of Calaway tending to show that he agreed to sell both farms to plaintiffs for the lump sum of $110,000, payable as subsequently set forth in the "Memorandum of Sale"; that he did not guarantee that the farms contained 400 acres or agree that, if they contained less than 400 acres, he would reduce or refund the purchase price by an amount equal to $275 per acre multiplied by the difference between the actual acreage and 400 acres; that he exhibited to Hoots his deed and maps which described the farms by metes and bounds and indicated the acreage was in excess of 400 acres; that, although the sale was not made on a per acre basis, it was his understanding that the two farms did contain at least 400 acres; that in his conversations with Hoots he called attention to the discrepancy in the description of the ninth tract, that is, that it actually contained 65 acres rather than the recited 77 plus acres.

Further review of defendants' evidence is unnecessary to decision of the question presented by this appeal.

At the conclusion of all the evidence, each defendant moved for a directed verdict. The motion of defendant Alice B. Calaway was granted. The motion of defendant H. R. Calaway was

denied. Thereupon, the court submitted and the jury answered the following issues:

"1. Did the defendant, H. R. Calaway, contract with the plaintiff, Allen F. Hoots, to sell two farms on a per acre basis as alleged in the Complaint?

"ANSWER: Yes.

"2. If so, did the real estate contained in the two farms contain less than 400 acres?

"ANSWER: Yes.

"If so, how much less?

"ANSWER: 42 acres."

Plaintiffs tendered judgment in their favor and excepted to the court's failure and refusal to sign it.

The court signed and entered the following judgment:

"THIS CAUSE coming on to be heard and being heard before the Honorable James M. Long, Judge Presiding over the January 10, and January 17, 1972, Sessions of Superior Court for Forsyth County, North Carolina, and being heard before a jury, and it appearing to the Court that at the close of the plaintiffs' evidence the defendants moved pursuant to Rule 50, G.S. 1A-1 for a directed verdict, and the Court being of the opinion that the motion should be allowed but submitted the issues as appear of record to the jury for answer, and directed the defendants, if they be so advised, to move under Rule 50(b) for a judgment notwithstanding the verdict in the event issues were answered for the plaintiffs.

"And it appearing to the Court that the issues were answered in favor of the plaintiffs as appear of record and that the defendants, within the time allowed by law, have filed written motion for judgment notwithstanding the verdict, and the Court still being of the opinion that the motion for directed verdict should have been allowed, and that the motion for judgment notwithstanding the verdict should now be allowed.

"And it further appearing to the Court that the plaintiffs made an alternative motion for a new trial and that the motion should be denied.

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:

"(1) That the verdict rendered by the jury in this cause be and the same is hereby set aside and vacated.

"(2) That the defendants' motion for directed verdict is hereby allowed and that the defendants' motion for judgment notwithstanding the verdict is hereby allowed; that this action is hereby dismissed with prejudice.

"(3) That the plaintiffs' alternative motion for a new trial be and the same is hereby denied.

"Let the costs of this action be taxed against the plaintiffs.

"By consent of the parties, this judgment is signed out of term and outside the district."

Plaintiffs excepted and appealed. The Court of Appeals reversed, one member of the hearing panel dissenting.

*Booe, Mitchell, Goodson and Shugart by William S. Mitchell and Wayne C. Shugart for plaintiff appellees.*

*White and Crumpler by James G. White and Michael J. Lewis for defendant appellant.*

BOBBITT, Chief Justice.

The sole question presented by this appeal is whether, as a matter of law, the evidence offered by plaintiffs, when considered in the light most favorable to them, was sufficient to be submitted to the jury. *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396 (1971); *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297 (1971); *Roberts v. Memorial Park,* 281 N.C. 48, 187 S.E. 2d 721 (1972).

Plaintiffs' action is based on legal principles stated by Justice (later Chief Justice) Barnhill in *Queen v. Sisk,* 238 N.C. 389, 391-92, 78 S.E. 2d 152, 155 (1953), as follows:

"When a sale is consummated upon an acreage basis and there is a deficiency in the quantity actually conveyed, a court of equity will abate the value of the deficiency at the agreed price per acre. [Citations omitted.]

"Where the purchase and sale is upon an acreage basis and the purchaser sues to recover on account of an alleged deficiency in the acreage and a consequent overpayment, he is not required

to allege or prove fraud. The action to recover the excess payment is an action in *assumpsit* for money had and received to the use of the plaintiff, under the doctrine of unjust enrichment. [Citations omitted.]"

Unquestionably, the testimony of Hoots as to his alleged parol agreement with Calaway, if competent, was sufficient to require submission of the first issue and to support an affirmative answer. Its competency is challenged by Calaway as inadmissible under the parol evidence rule.

For a general statement of the parol evidence rule, see Stansbury, N. C. Evidence 2d, § 251, quoted by Judge Morris in her opinion for the Court of Appeals. 15 N.C. App. 346, 351, 190 S.E. 2d 328, 331 (1972).

Having reached the conclusion that consideration ·of the testimony of Hoots as to the alleged parol agreement is not precluded by the parol evidence rule, we are not presently concerned with whether the rule is one of substantive law, as stated by Stansbury, or a rule of evidence, as implied in certain of our decisions. See *Products Corporation v. Chestnutt*, 252 N.C. 269, 275, 113 S.E. 2d 587, 593 (1960).

[1, 2] We agree with Judge Morris that *Stern v. Benbow*, 151 N.C. 460, 66 S.E. 445 (1909), is authority for the decision of the Court of Appeals and our decision in this case, and that the legal principles here applicable are stated by Chief Justice Clark as follows:

"When a contract is reduced to writing, parol evidence cannot be admitted, to vary, add to, or contradict the same. But when a part of the contract is in parol and part in writing, the parol part can be proven if it does not contradict or change that which is written. [Citations omitted.]

"It is true, also, that an agreement for the conveyance of the land is not binding unless reduced to writing and signed by the party to be charged; but a guarantee of the number of acres, like the receipt of the purchase-money or recital of the consideration, is not required to be in writing. [Citations omitted.]" *Id.* at 463, 66 S.E. at 446.

In *Sherrill v. Hagan*, 92 N.C. 345 (1885), the action was for the surrender and cancellation of a note and for money paid. Plaintiff purchased a tract of land known as the "George

Hooper Place" from defendant for $2,000, $1,000 of which was paid in cash and the balance secured by two notes. The first note was paid when due. The plaintiff paid $300 on the second note [presumably a $500 note] when it was due. Other than the deed and notes, there was no written evidence of the contract of sale. Over defendant's objection [based on the "parol evidence rule" and the "statute of frauds"] plaintiff was permitted to testify that before the date of the deed the defendant orally agreed with plaintiff that if the tract did not contain as much as 350 acres the defendant would make good the deficiency and refund the amount of the deficiency at the rate of $5.71 3/7 per acre. After the deed was delivered, plaintiff had the land surveyed and found that it contained only 298 3/4 acres. Defendant denied any such oral guarantee.

Three issues were submitted to the jury and answered as follows:

1. Did the defendant Hagan agree to pay or refund plaintiff $5.71 per acre for the difference between 350 acres and the number of acres actually contained in the land described in the pleadings, in case said land did not contain as much as 350 acres? The jury answered, "Yes." 2. How many acres did the land contain? The jury answered, "298½ acres." 3. How much does defendant owe plaintiff, if anything? The jury answered, "$294.06." The defendant appealed from the judgment entered on the verdict. The Supreme Court, finding no error, affirmed.

The following excerpts from the opinion of Justice Ashe show the basis of decision:

"[T]he undertaking to make good the deficiency in the number of acres was a distinct and independent contract, and did not purport or stipulate to pass any interest in the land, and, therefore, was not such an agreement as falls within the statute of frauds." *Id.* at 348-49.

"[C]onceding it to be all one contract, the deed is evidence of one part of the agreement, and the promise to make good the deficiency in the number of acres is another part of the contract left in parol, so that the parol proof offered and admitted did not add to or contradict the deed." *Id.* at 349-50.

*McGee v. Craven,* 106 N.C. 351, 11 S.E. 375 (1890), and *Currie v. Hawkins,* 118 N.C. 593, 24 S.E. 476 (1896), and *Stern v. Benbow, supra,* involve factual situations similar to

that considered in *Sherrill v. Hagan, supra,* and the decisions in the four cases and the bases of decision are in accord.

However, the only documents involved in those cases were deeds, purchase-money notes, and mortgages. Here consideration must be given to the "Memorandum of Sale."

[3] The evidence indicates that this "Memorandum of Sale" was prepared by Stephen Calaway and signed by Calaway on the occasion Hoots delivered his $30,000 check. On its face, the "Memorandum of Sale" is an informal document. As noted by Judge Morris, both Calaway and Stephen Calaway testified that this writing did not purport to embrace all terms of the Hoots-Calaway agreement. Stephen Calaway testified: "My intent was a receipt for the money and a summary recital of the payment terms and agreement as to the sale, but not the complete agreement." The pertinent question is whether the alleged oral agreement in respect of a guarantee of acreage is in conflict with any of the provisions of the "Memorandum of Sale."

We note that there is no controversy as to the identity of the land involved. The lines and corners of each farm were known to Hoots and to Calaway. According to Hoots, Calaway guaranteed the acreage to be at least 400 acres. The sale price of $110,000 is in accord with Hoots's testimony that the sale was based on 400 acres at $275 per acre. Calaway, according to his own testimony, thought the two farms contained 400 acres or more. He testified that his deeds and maps indicated he owned 400 acres or more. The "Memorandum of Sale" refers to "two farms in Advance, N. C. (400 acres more or less)." The tabulation of the acreage in the nine tracts described in the Calaway-Hoots deed exceeds 400 acres. In our view, the alleged oral agreement is not in conflict with any of the provisions of the "Memorandum of Sale."

We hold that the evidence, when considered in the light most favorable to plaintiffs, was sufficient to be submitted to the jury; that the original denial of defendant's motion for a directed verdict was correct; and that the court erred by entering judgment for Calaway notwithstanding the verdict.

There remains for consideration a feature of the case which is not discussed in the briefs.

The case is before us solely on plaintiffs' appeal. The judgment dismissed plaintiffs' action with prejudice. Defendant

(Calaway) did not except to or appeal therefrom. Hence, the record does not show exceptions, if any, defendant may have noted with reference to the admission or exclusion of evidence or to other features of the trial.

[4] The record shows: After the jury returned the verdict in plaintiffs' favor, defendant made a motion for judgment notwithstanding the verdict and joined with this motion an alternative motion for a new trial as authorized by G.S. § 1A-1, Rule 50(b)(1). [See Rule 59 relating to grounds for a new trial.] In granting defendant's motion for judgment notwithstanding the verdict, the court expressed the view that this rendered unnecessary the ruling on defendant's alternative motion for a new trial and failed to rule thereon.

We note that the court denied an alternative motion of *plaintiffs* for a new trial if the court denied their motion for judgment in accordance with the verdict.

G.S. § 1A-1, Rule 50(c)(1) provides: "If the motion for judgment notwithstanding the verdict, provided for in section (b) of this rule, is granted, the court shall also rule on the motion for new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for new trial is thus conditionally granted, the order thereon does not effect the finality of the judgment. In case the motion for new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate division has otherwise ordered. *In case the motion for new trial has been conditionally denied, the appellee on appeal may assert error in that denial;* and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate division." (Our italics.)

The court should have ruled on the merits of defendant's alternative motion for a new trial but failed to do so. If the court had conditionally denied the defendant's alternative motion for a new trial, defendant, as provided in Rule 50(c)(1), could have excepted to such order of denial and appealed conditionally therefrom. Incident to such conditional appeal, defendant was entitled to have *his* exceptions included in the case and record on appeal and to set forth the assignments of error which he asserted entitled him to a new trial in the event the judgment n.o.v. was reversed on appeal.

In future cases, the trial court must rule on an alternative motion for a new trial and a party must appeal conditionally from an adverse ruling thereon. In this connection, see generally *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 85 L.Ed. 147, 61 S.Ct. 189 (1940); 5A J. Moore, Federal Practice, Pars. 50.13-50.17; 9 C. Wright and A. Miller, Federal Practice and Procedure, §§ 2537-2540 (1971).

We note that, under our judicial system, the judge who conducted the trial of this case is no longer the presiding judge of the Twenty-first Judicial District. We deem it inappropriate for a superior court judge who did not try the case to pass now upon defendant's alternative motion for a new trial.

Under the circumstances of the present case, we have reached the conclusion that justice requires that defendant be afforded an opportunity to have considered on appeal any asserted errors of law which he contends entitles him to a new trial. Accordingly, the judgment of the Court of Appeals, which reverses the judgment n.o.v. and remands the cause for entry of judgment for plaintiffs on the verdict, is affirmed with direction that upon the entry of such judgment defendant be permitted, if so advised, to except thereto and appeal therefrom and upon appeal obtain a review of the errors for which he asserts he is entitled to a new trial.

Affirmed with directions as to order of remand.