MARY ALICE BRYANT v. HAYWARD KELLY, JR., AND CLARETHA SIMMONS KELLY; LINSTER O. SIMMONS AND WIFE, BLANCHIE SIMMONS; RAYMOND C. SIMMONS AND WIFE, REATHER SIMMONS; RANDOLPH SIMMONS AND WIFE, ETHEL SIMMONS; AND KADELL SIMMONS AND WIFE, LOUISE M. SIMMONS; ROBERT H. SIMMONS AND WIFE, FANNIE SIMMONS; CLEO ROOSEVELT SIMMONS; AND CHARLIE EDWARD SIMMONS

No. 88

(Filed 10 June 1971)

1. Trusts § 13— resulting trust — time of passage of consideration

No resulting trust could arise where the consideration passed more than a year after the transaction in which legal title was transferred.

2. Trusts § 13— parol trust

Where one person buys land under a parol agreement to do so and to hold it for another until he repays the purchase money, the purchaser becomes a trustee for the party for whom he purchased the land, and equity will enforce such an agreement.

3. Trusts § 13— parol trust — consideration·

A parol trust does not require a consideration to support it; if the declaration is made at or before the legal estate passes, it will be valid even if in favor of a mere volunteer.

4. Trusts § 17— proof of parol trust

Evidence of the establishment of a parol trust must be clear, cogent and convincing; a mere preponderance of the evidence is not sufficient.

5. Trusts § 13— parol trust

If there was clear, cogent and convincing evidence of an agreement between plaintiff and her brother that the land in question would be purchased for the benefit of both of them, and if that agreement was made before the brother took title to the land, a valid parol trust arose, regardless of when the consideration was paid by plaintiff to her brother.

6. Trusts § 13— parol trust — time of effectiveness

A parol trust becomes effective and binding at the time of the declaration and not at the time of the payment of the consideration.

7. Courts § 4— controversy exceeding $5,000 — jurisdiction of superior court

The Superior Court Division of the General Court of Justice is the proper division for the trial of all civil cases in which the amount in controversy exceeds $5,000. G.S. 7A-243.

8. Appeal and Error § 6— order transferring case to another trial division — appellate review

Orders transferring or refusing to transfer from one trial division of the General Court of Justice to another are not immediately appealable, even for abuse of discretion.

**9. Appeal and Error § 62— new trial — transfer of case to superior court**

Where this case was improvidently transferred from the superior court to the district court, and a new trial has been granted for other reasons, the Supreme Court orders that the case be transferred to the superior court for the retrial. G.S. 7A-260.

ON *certiorari* to review decision of the Court of Appeals upholding judgment of *Roberts, Chief District Judge,* 23 March 1970 Session of CRAVEN District Court.

Plaintiff commenced this action on 9 October 1968 to establish a trust in certain lands described in the complaint.

Plaintiff alleges in her complaint that Leonard Nixon Simmons died intestate on or about 26 August 1966 and that defendants (with spouses) are all of his heirs at law; that on or about 16 November 1946 plaintiff and Leonard Nixon Simmons entered into an agreement to purchase from Craven County a certain tract of land described in the complaint; that the purchase price was $805, of which plaintiff should contribute the sum of $250, and that plaintiff should own a certain described portion of the land. Plaintiff further alleged that she paid the $250 and that Leonard, using said money, purchased the land pursuant to said agreement and took a deed in his own name, agreeing that he would hold plaintiff's interest in trust, which he did until his death on 26 August 1966; that plaintiff and her family continuously possessed, farmed, and used as their own, with the full acquiescence and consent of the said Leonard Nixon Simmons, the portion of the property which he held in trust for her; that plaintiff each year paid to Leonard that portion of real estate taxes attributable to plaintiff's portion of the land; that since Leonard's death plaintiff has demanded of defendants that they convey her portion of the lands to her, but they have refused to do so and claim the whole of said property as their own.

Defendants deny the material allegations of the complaint and affirmatively plead laches and the statute of limitations.

The parties through their counsel stipulated that Miles Simmons, father of Mary Alice Bryant and Leonard Nixon Simmons, owned the subject lands prior to 1942; that the lands were part of those which were foreclosed for taxes by Craven County and conveyed by John A. Guion, Commissioner, to Craven County by deed dated 20 April 1942, recorded in

Book 364, page 94, Craven County Registry; and that said lands were conveyed by Craven County to Leonard Simmons on 16 November 1946, for a consideration of $805, by deed recorded in Book 402 at page 149, Craven County Registry.

Plaintiff as a witness in her own behalf testified that she lived on the land in question in 1942 and was also living there in 1946; that she continued to live on the land for about fifteen years after 1946; that "after my brother and myself got the property back, I stayed up there about ten years. There was a ditch dividing the land that I contended was mine. It was the tract my house was on; . . . there was a ditch right straight through and he told me and I tended on one side the ditch, and he on the other." Plaintiff further stated that her brother Leonard came to see her about repurchasing the land "while the land was in Craven County's name." She said that from 1946 until her brother Leonard died she farmed the land and cut timber and firewood off of it, "and there were no objections made to our cutting timber or farming the land. No objections were made until after my brother Leonard died."

Plaintiff's husband, Earl Bryant, testified that he and his wife were living on the property in 1946; that he was present when Leonard Simmons discussed the repurchase of the property from Craven County; that as a result of that discussion he and his wife got together $250 and he gave that sum to Leonard Simmons to apply on the purchase price; that the wife of Leonard Simmons, at Leonard's direction, wrote a receipt for the money; that there was an agreement "between me and my wife and Leonard Simmons about her paying so much money for the land, and that was before the land was deeded to him, by the County"; that it was agreed that the ditch would be the dividing line between plaintiff's land and her brother Leonard's land; that since 1946 plaintiff has farmed the cleared lands, used the crops and made no division whatever with Leonard Simmons; that "she stayed on one side of the ditch and he stayed on the other"; that plaintiff helped pay the taxes, cut timber and sold logs off the land, grew and gathered the crops, and Leonard Simmons never objected; that plaintiff was living on the land at the time it was repurchased from Craven County.

Nathaniel Simmons, a brother of plaintiff and Leonard Simmons, testified that Leonard talked to him on several occa-

sions and "asked me to go in with him and buy it and so I told him that since I was so far [away] and lived in Pollocks-ville for him to get my sister Mary Alice and her husband to buy since she was living on the place." This witness further stated: "My brother Leonard told me that my sister had paid $250 on the land. I heard my brother Leonard say that the bound-ary line was the ditch near or opposite of the house and the part Mary Alice was supposed to have was on the right-hand side of the ditch. I heard him say this on more than one occasion, and I have seen a receipt for the $250. My sister showed me the receipt where she paid the money. I think his wife wrote it. My sister Mary Alice Bryant has been in possession of said lands on the house side of the ditch . . . until a year or so ago. I also know my brother Charlie paid part on the land. Yes, Brother Charlie paid him a hundred dollars and he gave Web-ster, his son, a deed. He gave my brother Charlie's son a deed for eight or ten acres."

Charity Simmons Bryant, sister of plaintiff and Leonard Simmons, testified that she had heard Leonard Simmons say that he and Mary Alice were buying the land back together and the ditch would divide them—he would be on one side of the ditch and she on the other; that Leonard said "they would buy it together and the ditch would divide it."

Romance Simmons, widow of Leonard Simmons, testified that her husband died in August 1966; that she was present when Earl Bryant came to the house with $250; that Leonard told her to write a receipt for the money and she did so; that the receipt "was supposed to be for Mary Alice's part of the land"; that she was married to Leonard Simmons at the time the receipt was written, having been married on 28 January 1947; that when she wrote the receipt she made a copy, which she still had, and the copy of the receipt reads: "November 28, 1947, received from Earl Bryant $250 for property; $250 (signed) Leonard Simmons"; that she wrote the receipt and signed it and Leonard told her to do so; that the copy of the receipt is not a carbon copy but an exact duplicate—that she wrote the receipt twice, "one for him and one to keep."

Madeline Banks, plaintiff's daughter, testified that she had heard her parents and Uncle Leonard discussing on more than one occasion the purchase of the land that formerly belonged

to her grandfather Miles Simmons; that her Uncle Leonard "asked them if they wanted to buy the land in with him, and they said that they did. And so later they got the money together and gave him the money"; that they had talked about this land a long time, a year or two or maybe more, and her mother told him that she would pay $250; that her father and mother were living on the land at the time, farming it, cutting timber, and continued to do so until a year or two ago; that she never heard Leonard Simmons voice any objection to the use of the land by her mother on her side of the ditch.

Robert Forrest testified that he lives about two miles from the land in controversy; that he is familiar with the location of the ditch referred to; that it runs in approximately a straight line; that the land lying east of the line marked on the map (Plaintiff's Exhibit A) as "A-B" has been in the possession of the Earl Bryant family since 1941.

Kadell Simmons, son of Leonard Simmons, was called by plaintiff as an adverse witness. He testified that "Mary Alice Bryant has been in possession of the land on the house side all of her lifetime. . . . She has been tending it every since I have known anything about it and I have never heard my father object to it."

Robert Simmons, son of Leonard Simmons, was called by plaintiff as an adverse witness. He testified that "Aunt Mary Alice has been tending it since about 1940 and lived right out there on it until she moved—since 1940 until my daddy died she tended the land on one side of the ditch. . . . My understanding from my daddy was that they had some kind of agreement. . . . "

At the close of plaintiff's evidence the defendants moved for a "directed verdict." The court thereupon allowed the motion, made findings of fact, conclusions of law, and entered judgment as follows:

(a) Leonard Nixon Simmons purchased the subject lands for $805.00 on November 16, 1946, and took a deed in his name on that date, having the same recorded in Book 402, at Page 149, in the Office of the Register of Deeds of Craven County, North Carolina;

(b) Leonard Nixon Simmons married Romance Simmons on January 28, 1947;

(c) Earl Bryant paid $250.00 to Leonard Nixon Simmons on behalf of his wife, the plaintiff, after Leonard Nixon Simmons married Romance Simmons;

(d) Earl Bryant paid $250.00 'for property' to Leonard Nixon Simmons on behalf of his wife, the plaintiff, on November 28, 1947;

(e) There was no agreement between plaintiff and Leonard Nixon Simmons on the subject lands binding on Leonard Nixon Simmons unless and until plaintiff paid the sum of $250.00.

Upon the foregoing Findings of Fact, the undersigned makes the following

CONCLUSIONS OF LAW:

At the time of his death on August 26, 1966, Leonard Nixon Simmons did not hold the subject lands in trust for the plaintiff, Mary Alice Bryant, as a result of the plaintiff paying or causing to be paid a portion of the purchase price of the said lands, neither as a result of any agreement binding between the parties prior to the purchase of said subject lands by Leonard Nixon Simmons.

NOW, THEREFORE, it is ORDERED and ADJUDGED that defendants' motion for directed verdict in favor of defendants at the close of plaintiff's evidence should be and the same hereby is allowed. Plaintiff to pay the costs.

This 23rd day of March, 1970.

/s/ J. W. H. Roberts
Chief Judge

To the entry of the foregoing judgment plaintiff excepted and appealed. The Court of Appeals affirmed, 10 N.C. App. 208. We allowed *certiorari* to review that decision.

*Brock & Gerrans by Donald P. Brock, Attorneys for plaintiff appellant.*

*Beaman & Kellum by Norman B. Kellum, Jr. and Trawick H. Stubbs, Jr., Attorneys for defendant appellees.*

HUSKINS, Justice.

The Court of Appeals correctly treated defendants' motion for a directed verdict as a motion for involuntary dismissal. Directed verdicts are appropriate only in jury cases. See Rule 50(a).

The trial judge concluded as a matter of law that Leonard Nixon Simmons did not hold the subject lands in trust for the plaintiff. This conclusion apparently rests on the "finding of fact" that there was no agreement "between plaintiff and Leonard Nixon Simmons on the subject lands binding on Leonard Nixon Simmons unless and until plaintiff paid the sum of $250."

[1] We first dispose of all questions relating to purchase money resulting trusts. "It is elemental that a resulting trust arises, if at all, in the same transaction in which the legal title passes, and by virtue of consideration advanced before or at the time the legal title passes, and not from consideration thereafter paid." *Rhodes v. Raxter*, 242 N.C. 206, 87 S.E. 2d 265 (1955). It is clear from the evidence here, and it was so found by the trial judge, that the consideration passed more than a year *after* the transaction in which the legal title was transferred. Therefore, no resulting trust could arise.

[2-4] We turn to the law of parol trusts. North Carolina is one of a minority of states that has never adopted the Seventh Section of the English Statute of Frauds which requires all trusts in land to be manifested in writing. 29 Charles II, c. 3, § 7 (1676); *Carlisle v. Carlisle*, 225 N.C. 462, 35 S.E. 2d 418 (1945); Lord and Van Hecke, Parol Trusts in North Carolina, 8 N.C. L. Rev. 152 (1930); Bogert, Trusts and Trustees (2d Ed., 1965), § 64. Even so, this Court has consistently enforced safeguards that considerably limit the application of the parol trust doctrine. Lord and Van Hecke, *supra; Pittman v. Pittman*, 107 N.C. 159, 12 S.E. 61 (1890); *Paul v. Neece*, 244 N.C. 565, 94 S.E. 2d 596 (1956). Despite such limitations, this Court has always upheld parol trusts in land in the "A to B to hold in trust for C" situation. The rule is stated in *Paul v. Neece, supra,* in these words: "[I]t is uniformly held to be the law in this State that where one person buys land under a parol agreement to do so and to hold it for another until he repays the purchase money, the purchaser becomes a trustee for the party

for whom he purchased the land, and equity will enforce such an agreement." *See also Beasley v. Wilson,* 267 N.C. 95, 147 S.E. 2d 577 (1966) ; *Martin v. Underhill,* 265 N.C. 669, 144 S.E. 2d 872 (1965) ; *Roberson v. Pruden,* 242 N.C. 632, 89 S.E. 2d 250 (1955) ; *Hare v. Weil,* 213 N.C. 484, 196 S.E. 869 (1938) ; *Owens v. Williams,* 130 N.C. 165, 41 S.E. 93 (1902) ; 54 Am. Jur., Trusts, §§ 47, 48; 89 C.J.S., Trusts, §§ 32(b), 34; Bogert, *supra,* § 64; 1 Scott on Trusts (3d Ed., 1967), § 40.1. Moreover, a parol trust "does not require a consideration to support it. If the declaration is made at or before the legal estate passes, it will be valid even if in favor of a mere volunteer." *Hare v. Weil, supra; Paul v. Neece, supra.* Evidence of the establishment of a parol trust is required to be clear, cogent, and convincing; a mere preponderance of the evidence is not sufficient. *Paul v. Neece, supra; Pittman v. Pittman, supra.*

[5, 6] Applying the foregoing legal principles, if there was clear, cogent, and convincing evidence of an agreement between the plaintiff and Leonard Nixon Simmons that the land in question would be repurchased from Craven County for the benefit of both of them, and if that agreement was made before Simmons took title to the land, then a valid parol trust arose, regardless of when the consideration was paid. The trial judge, sitting as judge and jury, did not find as a fact that there was or was not such a prior agreement or declaration. Instead, he found: "There was no agreement between plaintiff and Leonard Nixon Simmons on the subject lands *binding* on Leonard Nixon Simmons unless and until plaintiff paid the sum of $250.00." (Emphasis added.) This finding is not a finding of fact but a conclusion of law, and as a conclusion of law it is erroneous. A parol trust becomes effective and binding at the time of the declaration and not at the time of the payment of the consideration. *Paul v. Neece, supra.*

Since the conclusion of the trial judge was grounded upon inadequate findings of fact and upon the erroneous legal notion that the agreement between the parties, if any, was not binding unless and until a consideration was paid, the decision of the Court of Appeals must be reversed and the case remanded for a new trial at which findings may be made as to whether such an agreement existed. Judgment may then be rendered thereon according to law.

Bryant v. Kelly

For the sake of brevity, we refrain from a detailed discussion of other assignments relating to exclusion of certain evidence plaintiff sought to elicit from Earl Bryant, Charity Simmons and Madeline Banks. Many of these exceptions are well taken. Admissibility of such evidence is governed by G.S. 8-51 as interpreted in *Peek v. Shook,* 233 N.C. 259, 63 S.E. 2d 542 (1951), and discussed in Stansbury, North Carolina Evidence (2d Ed., 1963), §§ 66-70, 73.

This action was commenced initially in the Superior Court of Craven County on 9 October 1968. The District Court Division of the General Court of Justice was established in the Third Judicial District on 2 December 1968. G.S. 7A-131(2). The Resident Judge of the Third Judicial District, on his own motion, transferred the cause to the district court for trial by order dated 2 December 1968. Plaintiff has filed written motion in this Court to remand the case to the Superior Court of Craven County for trial. Her motion is supported by affidavits that the lands in controversy are worth $10,000 to $15,000. Plaintiff asserts that the cause was transferred to the district court for trial on the mistaken belief that the value did not exceed $5,000.

[7] G.S. 7A-259(b) provides that when a district court is established in a district, "any superior court judge authorized to hear and determine motions to transfer may, on his own motion, subject to the requirements of subsection (a), transfer to the district court cases pending in the superior court." Subsection (a) of that statute provides in pertinent part: "Transfer is not made on the judge's own motion unless the pleadings clearly show that the case is pending in an improper division." The pleadings in this case do not reflect the value of the land and do not otherwise show the amount in controversy. The Superior Court Division of the General Court of Justice is the proper division for the trial of all civil cases in which the amount in controversy exceeds $5,000. G.S. 7A-243.

[8, 9] Orders transferring or refusing to transfer from one trial division of the General Court of Justice to another are not immediately appealable, even for abuse of discretion. "Such orders are reviewable only by the appellate division on appeal from a final judgment. If on review, such an order is found erroneous, reversal or remand is not granted unless prejudice

is shown. If, on review, a new trial or partial new trial is ordered for other reasons, the appellate division may specify the proper division for new trial and order a transfer thereto." G.S. 7A-260. In our view, the superior court is the proper division for the trial of this case. It was improvidently transferred to the district court. Since a new trial is ordered for other reasons, it is ordered that the case be transferred to the Superior Court of Craven County for the retrial.

For the reasons set out, the decision of the Court of Appeals is reversed and the case remanded to that court for appropriate entries in accord with this opinion.

Reversed and remanded.