TOWN OF ROLESVILLE v. JESSE J. PERRY AND MARY CATHERINE PERRY, HIS WIFE

No. 7310SC498

(Filed 1 May 1974)

1. **Rules of Civil Procedure § 41— trial without jury — motion for involuntary dismissal**

    Defendants' motion for a directed verdict made in a case without a jury is treated by the court as a motion for an involuntary dismissal under Rule 41(b).

2. **Nuisance § 9; Injunctions § 7— garage near well — insufficiency of evidence of nuisance**

    Plaintiff's evidence was insufficient to entitle it to an injunction against defendants' use of their property for the operation of a garage

on the ground that such use would constitute a public nuisance in that such use would entail the placing on defendants' lot of toxic substances which could be carried by drainage or seepage through rock crevices into the town well where plaintiff's evidence, at most, showed only a remote possibility that under special circumstances substances from defendants' lot might in times of heavy pumping be drawn toward plaintiff's well.

APPEAL by plaintiff from *Hobgood, Judge,* 15 January 1973 Session of Superior Court held in WAKE County.

Plaintiff, the Town of Rolesville, is a municipal corporation. In September 1971, defendants purchased a lot in the Town, their lot being rectangular in shape and having 300 feet frontage and a depth of 280 feet. About 160 feet north from the north line of this lot, and on the other side of a small stream from the lot, is located one of the Town wells which supplies drinking water for its citizens.

Prior to 4 December 1972, defendants made preparations to construct on their lot a building to be used as an automotive repair garage. The Town of Rolesville has no zoning ordinance. Prior to 4 December 1972, it had no ordinance requiring any kind of building permit. On that date, the Board of Commissioners of the Town enacted an ordinance providing that no person shall commence or proceed with construction of any building within the Town without first obtaining from the Board a written permit containing a finding by the Board that the proposed construction or the use to be made of the building when completed "will not be detrimental, dangerous, or prejudicial to the public health and safety." The ordinance defines any construction or use of property in violation of its provisions as a public nuisance. On 6 December 1972, defendants were notified of passage of this ordinance, but they did not apply to the Town for a building permit. On 14 December 1972, the Town commenced this action seeking to restrain defendants from proceeding with construction of their building and to enjoin them permanently from using any portion of their property as an automotive garage.

In its complaint the Town alleged that "the terrain inclines downwardly from [defendants'] said lot in a northerly direction to said well, the soil is rocky with the probability of cracks in the large rocks above the water table"; that "construction on said lot of a building to be used as an automotive garage with the attendant use on said premises of such toxic substances

as lead gas, kerosene, solvents, and cleaning fluids . . . would be detrimental, dangerous, and prejudicial to the public health and safety of the citizens of the plaintiff, in that said toxic substances could be carried by drainage or by seepage through said rock crevices into the said well, thereby contaminating and polluting the water used by the citizens of said plaintiff"; and that "the use of said property as threatened by said defendants would constitute a public nuisance." Defendants filed answer denying these allegations and alleging as a defense that they had purchased their land and begun construction of a garage, a legitimate enterprise, prior to enactment of the ordinance on 4 December 1972; that prior to beginning construction they had complied with all laws and rules then applicable and had received permits from the proper authorities; that operation of the garage by the defendants would not contaminate or pollute the water of the Town or become a nuisance; that "any oil or other substances located around the garage, if operating, would be stored, sold and recycled; that there would be no runoff of said substances from the garage and the Town water supply would not be endangered."

After issuance of a temporary restraining order and a preliminary injunction, the matter came on for trial in the Superior Court. Neither party requested a jury, and the matter was heard without objection by the judge without a jury. At close of plaintiff's evidence, defendants made a motion for a directed verdict under Rule 50 (a) of the Rules of Civil Procedure. This motion was allowed, and judgment was entered in which the court made findings of fact, set forth conclusions of law, and adjudged that the plaintiff be denied the relief sought and the action be dismissed. Plaintiff gave notice of appeal, and the court, finding that the status quo should be preserved pending the appeal, continued the preliminary injunction in effect until final disposition of the appeal.

*Harris & Harris by Jane P. Harris for plaintiff appellant.*

*Edward Paschal for defendant appellees.*

PARKER, Judge.

[1] Motion for a directed verdict is appropriate only in a jury trial. This case having been tried without a jury, the proper motion by which to test the sufficiency of plaintiff's evidence to establish a right to relief was a motion for involuntary dis-

Town of Rolesville v. Perry

missal under Rule 41(b). *Bryant v. Kelly,* 10 N.C. App. 208, 178 S.E. 2d 113, *rev'd* on other grounds in 279 N.C. 123, 181 S.E. 2d 438. We will treat the defendants' motion for a directed verdict as a motion for an involuntary dismissal under Rule 41(b). *Mills v. Koscot Interplanetary,* 13 N.C. App. 681, 187 S.E. 2d 372.

> "In ruling on a motion to dismiss under Rule 41(b), applicable only 'in an action tried by the court without a jury,' the court must pass upon whether the evidence is sufficient as a matter of law to permit a recovery; and, if so, must pass upon the weight and credibility of the evidence upon which the plaintiff must rely in order to recover." *Knitting, Inc. v. Yarn Co.,* 11 N.C. App. 162, 180 S.E. 2d 611.

Plaintiff does not rest its claim for an injunction to prohibit defendants from erecting an automotive repair garage on their lot upon the provisions of any valid zoning ordinance or upon an ordinance prohibiting operation of all such garages within the Town limits. In its complaint plaintiff did refer to the ordinance adopted by its Town Board on 4 December 1972 which purported to prohibit any person from commencing or proceeding with construction of any building within the Town without first obtaining from the Town Board a written permit which contained a finding by the Board that the proposed construction or use to be made of the building when completed "will not be detrimental, dangerous, or prejudicial to the public health and safety." This ordinance, by its terms, defined as a public nuisance any construction or use of property in violation of the ordinance. It is manifest, however, that mere enactment of the ordinance and refusal to issue a permit under it cannot give the Town Board lawful authority to make a public nuisance out of what in fact is not one, and no such arbitrary power is claimed by appellant on this appeal. Further, no contention has been made that the building which defendants propose to erect on their lot would in itself be in any way unsafe or "detrimental, dangerous, or prejudicial to the public health and safety." Rather, plaintiff rests its case for an injunction entirely upon its claim that the use which defendants propose to make of their building would constitute a public nuisance, in that such use would entail the placing on defendants' lot of toxic substances which could be carried by drainage or seepage through rock crevices into the Town well. The question presented by this

appeal, therefore, is whether plaintiff's evidence was sufficient to establish that the use which defendants propose to make of their lot would constitute a public nuisance in the respects claimed so as to entitle plaintiff to the requested injunction. We agree with the trial judge that it was not.

The evidence showed the following: Plaintiff's Town well is about 160 feet north from the north line of defendants' lot. The lot is separated from the well by a small stream, which flows between the lot and the well and in a northwest direction, defendants' lot being approximately 40 to 50 feet southwest of the stream at its closest point, and the well being northeast of the stream. Proceeding northwardly from defendants' lot, the ground slopes downward until it reaches the banks of the stream, and then on the other side of the stream it slopes upward to the well. Plaintiff's witness Berry, a ground water geologist with the State Department of Water and Air Resources, who was allowed by the court to testify as an expert in geology and ground water, testified that the soil at this location varies from two to five feet deep, below which there is a substratum of weathered granite until a total depth of nine or ten feet, below which "you will get into solid rock with very few fractures." This witness testified that the fractures in the granite slope in a northwest direction, going down into the earth, and sloping in the same direction that the little stream flows. In his opinion, if any oil or other substances ran into the stream, "it would have a normal tendency to go on with the stream . . . instead of seeping into the rocks." This witness also testified that if solvents, spent oil, gasoline or other materials used in an automotive garage operation were in a "sufficient amount," by which the witness meant "enough to saturate the soil," and "if it were to saturate the soil and go into the rock crevices, it would probably eventually pollute the water table in the area, and this would be drawn toward the well during times of heavy pumping." There was no evidence that defendants' contemplated use of their property would ever entail the discharge or spilling upon the land of such "solvents, spent oil, gasoline and other materials" in quantities sufficient to saturate the soil, or that if it did, that such materials would then "go into the rock crevices."

[2]  In the judgment allowing defendants' motion and dismissing plaintiff's action, the trial judge made findings of fact, including the following:

"That the plaintiff has not offered competent evidence to substantiate the allegations of the complaint that the water would be polluted by the operation of an automotive garage on the premises and that the same would be a nuisance."

We agree. The burden was on the plaintiff to introduce evidence to establish a right to the requested injunctive relief. At most, plaintiff's evidence showed only a remote possibility that under special circumstances, which the evidence failed to show would ever exist and which in all probability never will exist, substances from defendants' lot might in times of heavy pumping be drawn toward plaintiff's well.

Plaintiff's evidence failed to show any substantial probability that the contemplated use by the defendants of their property would constitute a public nuisance. The judgment appealed from is

Affirmed.

Judges BRITT and MORRIS concur.