PERRY J. RAY v. JOHN ARVIE NORRIS, ADMINISTRATOR CTA OF THE ESTATE OF DEBORAH LYNN NORRIS, JOHN ARVIE NORRIS AND KATHERINE HODGES NORRIS

No. 8511SC120

(Filed 17 December 1985)

1. Trusts § 19— purchase money resulting trust—sufficiency of evidence

In an action to impose a purchase money resulting trust, plaintiff's evidence was sufficient to be submitted to the jury where it tended to show that he furnished money to deceased defendant for the purpose of buying a house, that she used some of the money to make a partial downpayment on the house, and that the balance of the downpayment was secured by a lien on plaintiff's car and was later paid by a check from plaintiff's business; a witness testified that she heard plaintiff tell deceased defendant that he would use company money, put it in defendant's account, then pay the downpayment, pay the remainder, and then have the deed put in his name when his credit was cleared, and the witness heard defendant agree to this arrangement; a reasonable inference could be drawn from this testimony that plaintiff was obligated by a promise made to defendant before the title passed to provide funds with which she could pay the note for the balance of the purchase price; and there was also evidence tending to show that plaintiff carried out this agreement either by depositing funds in defendant's account so that she could make the payments, or by making payments directly to defendant's lender.

2. Trusts § 15; Equity § 1.1— purchase money resulting trust—clean hands doctrine inapplicable

The clean hands doctrine was not applicable in an action to impose a purchase money resulting trust, though there was evidence that plaintiff and deceased defendant were cohabiting illicitly and had planned a deceptive scheme to secure financing, since there was no evidence that plaintiff provided the funds as consideration for illicit sexual intercourse or that plaintiff had acted dishonestly or unfairly toward defendant; there was no evidence that title was placed in defendant's name for an illegal purpose; though the lender may have been induced to make a loan which it otherwise would not have made, the scheme was not designed to shield the property from foreclosure in the event of nonpayment or to diminish or imperil the lender's secured posi-

tion in any respect; and the lender did not complain but willingly accepted payments from plaintiff.

**3. Trusts § 20— purchase money resulting trust—instruction on pro tanto resulting trust not required**

　　In an action to establish a purchase money resulting trust, defendants were not entitled to an instruction on *pro tanto* resulting trust, even if there was evidence that deceased defendant was obligated on the purchase money note and made fourteen payments on it from her own account, since, under the instructions given, the jury was permitted to find that plaintiff was entitled to a resulting trust only if they found that he had advanced all the funds for the downpayment and that he was obligated to provide defendant with the remaining funds for the mortgage payments pursuant to the agreement of the parties at or before the time title passed.

APPEAL by defendant from *Bowen, Wiley F., Judge*. Judgment entered 3 October 1984 in Superior Court, HARNETT County. Heard in the Court of Appeals 18 September 1985.

Plaintiff brought this action against Deborah Lynn Norris seeking the imposition of a purchase money resulting trust upon property which he alleged was purchased by her with monies supplied by him, pursuant to an oral agreement that she would hold title for his benefit. Deborah Lynn Norris died during the pendency of the action and by consent order John Arvie Norris, as Administrator CTA of her estate, was substituted for her as a defendant. In addition, John Arvie Norris, individually and his wife Katherine Hodges Norris, who are Deborah Norris' parents, were joined as defendants.

At trial, plaintiff offered evidence tending to show that plaintiff and Deborah Norris were cohabitating at the time plaintiff located a home in the Buffaloe Lakes area which he wished to purchase. Due to his bad credit rating plaintiff knew he could not purchase the home in his own name because he could not qualify for a home loan. Knowing that Deborah's credit was good, plaintiff discussed with her a plan whereby he would place $12,000 from his business into her bank account so that it would appear to the lending institution that she had sufficient funds for a downpayment on the home and payment of closing costs. She would then apply for a loan for the balance of the purchase price. According to plaintiff's evidence, plaintiff told Deborah that he would make the monthly payments on the loan and when his credit cleared, the deed to the house would be put in his name. Deb-

orah agreed to the arrangement. However, Deborah had a salary of only $50 per week as a part time employee of plaintiff's partnership and it was apparent to the parties that this was insufficient to obtain a home loan. In the furtherance of the plan, Deborah represented to the lending institution that she had a monthly salary of $1,375 as an employee of Eastern Seaboard Advertising, a partnership in which plaintiff had a fifty percent interest. Plaintiff provided a wage verification statement to the lending institution certifying that Deborah's annual salary was $16,500. Deborah made a written offer to purchase the house for $44,000 which was accepted by the seller, Edward Lind. The contract provided for a $5,000 deposit and an additional $5,000 to be paid at the closing. The $5,000 deposit, according to plaintiff's evidence, was paid from the money deposited by plaintiff in Deborah's account. The remaining $5,000 due on the downpayment was secured by a lien on plaintiff's car. This amount was later paid in full with a check from plaintiff's partnership. Deborah also borrowed $34,000 from First Federal Savings and Loan of Sanford, securing her note by a deed of trust on the property. After closing plaintiff and Deborah moved into the home and resided together from February 1979 until January 1982 when their relationship deteriorated. Plaintiff also offered evidence tending to show that while they were living in the house Deborah referred to the house as plaintiff's house. The evidence also indicated that several checks were issued by plaintiff's company to Deborah in the exact amount of the monthly mortgage payments; other checks were issued from plaintiff's company directly to First Federal Savings and Loan.

Upon a jury verdict finding that the property was held under a purchase money resulting trust for the benefit of plaintiff, judgment was entered awarding him fee simple title and possession of the property. Defendants appealed.

*L. Randolph Doffermyre, III for plaintiff appellee.*

*Bryan, Jones, Johnson & Snow, by James M. Johnson for defendant appellants.*

MARTIN, Judge.

Defendants bring forward three assignments of error; (1) the trial court's failure to direct a verdict in favor of the defendants

due to the insufficiency of plaintiff's evidence, (2) the trial court's refusal to instruct on the doctrine of clean hands, and (3) its refusal to instruct on the doctrine of *pro tanto* resulting trust. Upon our review of the record we find that neither the doctrine of *pro tanto* resulting trust nor the clean hands doctrine is applicable to these facts and that there was sufficient evidence from which the jury could find that a resulting trust arose in favor of the plaintiff. We find no error in the trial.

In their first assignment of error defendants contend that their motion for a directed verdict made at the close of plaintiff's evidence and again at the close of all the evidence should have been granted because the plaintiff failed to establish that he was obligated to pay the purchase price. Defendants also contend that plaintiff's own evidence, showing that he and Deborah Norris were cohabitating and that they planned a deceptive scheme to secure financing for the transaction, barred his cause of action under the doctrine of clean hands.

Defendants' first contention requires a brief review of principles relating to the creation of resulting trusts. A compilation of these principles is contained in *Mims v. Mims,* 305 N.C. 41, 286 S.E. 2d 779 (1982). A summary of those applicable in the case *sub judice* follows:

> A resulting trust arises "when a person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another. . . . A trust of this sort does not arise from or depend on any agreement between the parties. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another." (Citation omitted.) The trust is created in order to effectuate what the law presumes to have been the intention of the parties in these circumstances—that the person to whom the land was conveyed hold it as trustee for the person who supplied the purchase money. (Citations omitted.) "The classic example of a resulting trust is the purchase-money resulting trust. In such a situation, when one person furnishes the consideration to pay for land, title to which is taken in the name of another, a resulting trust commensurate with his interest arises in favor of the one furnishing the consideration. . . ." (Citation omitted.)

*Id.* at 46-47, 286 S.E. 2d at 783-84. "[A] resulting trust arises, if at all, in the same transaction in which legal title passes, and by virtue of consideration advanced before or at the time legal title passes, and not from consideration thereafter paid." *Id.* at 57, 286 S.E. 2d at 790 (quoting *Bryant v. Kelly*, 279 N.C. 123, 129, 181 S.E. 2d 438, 441 (1971)). The creation of a resulting trust depends on the intention, at the time of transfer, of the person furnishing the consideration, which intention is to be determined from the facts and circumstances surrounding the transaction. *Id.* The intent of the party claiming the trust may be shown by evidence of statements made by the parties at or before the time title passes, and statements made by the grantee after title passes. *Id.* Evidence of the parties' conduct, before and after title passes, is admissible on the issue of intent. *Id.* Where less than the full amount of the purchase price is paid at the time of purchase, the party seeking imposition of the trust must have furnished that portion which has been paid, and must have incurred an absolute obligation to pay the remainder as a part of the original transaction of purchase at or before the time of conveyance. *Waddell v. Carson*, 245 N.C. 669, 97 S.E. 2d 222 (1957).

Defendants argue that because plaintiff was not legally obligated on the purchase money note to First Federal, he has not incurred an obligation to pay. We disagree. The person claiming the benefit of a resulting trust need not be obligated directly to the grantee's lender; it is sufficient if he is obligated to the *grantee*, pursuant to a promise made before title passes, to make payments to the grantee which will enable the grantee to pay the remainder of the purchase price. *See Cline v. Cline*, 297 N.C. 336, 255 S.E. 2d 399 (1979). In such a case, the grantee is considered to have made a loan of credit to the one who promises to, and actually does, provide the funds to pay the remainder of the purchase price. *Davis v. Downer*, 210 Mass. 573, 97 N.E. 90 (1912); *Crowell v. Stefani*, 12 Mass. App. Ct. 966, 428 N.E. 2d 334 (1981). *See also* Bogert, The Law of Trusts and Trustees § 456 (Rev. 2d ed. 1977). The grantee does not benefit from, and is not entitled to, the proceeds of the loan; the grantee's only interest is to be indemnified against paying the indebtedness. *Albae v. Harbin*, 249 Ala. 201, 30 So. 2d 459 (1947).

Upon a motion for directed verdict the evidence is to be viewed in the light most favorable to the nonmovant. All conflicts

and inconsistencies in the evidence are resolved against the party moving for a directed verdict. The party against whom the motion is made is also entitled to every reasonable inference that may be drawn from the evidence. *West v. Slick*, 313 N.C. 33, 326 S.E. 2d 601 (1985).

[1]   Applying these principles to the case before us, we hold that plaintiff's evidence was sufficient to withstand the motion for directed verdict. Plaintiff's evidence tends to show that he furnished money to Deborah Norris for the purpose of buying the house, that she used some of the money to make a partial downpayment on the house, and that the balance of the downpayment was secured by a lien on plaintiff's car and later paid by a check from plaintiff's business. Paula Ray, plaintiff's ex-wife, testified that she heard plaintiff tell Deborah Norris that "he would use the money, company money, put it in Debbie's account, then pay the down payment, pay the remainder, then at another time when his credit would be cleared . . ." the deed to the house could be put in his name. Paula Ray testified that Deborah Norris agreed to this arrangement. A reasonable inference may be drawn from this testimony that Perry Ray was obligated, by a promise made to Deborah before the title passed, to provide funds with which she could pay the note for the balance of the purchase price. There was also evidence tending to show that he carried out this agreement by either depositing funds in Deborah's account so that she could make the payments, or by making the payments directly to the savings and loan. This assignment is overruled.

[2]   Defendants also contend that they were entitled to a dismissal of plaintiff's action because the evidence that plaintiff and Deborah were cohabitating illicitly and had planned a deceptive scheme to secure financing establishes, as a matter of law, that plaintiff had not come into court with "clean hands." Alternatively, they contend that they were entitled to have the issue of "clean hands" submitted to the jury.

The doctrine of clean hands is an equitable defense which prevents recovery where the party seeking relief comes into court with unclean hands. However, "[r]elief is not to be denied because of general iniquitous conduct on the part of the complainant or because of the latter's wrongdoing in the course of a transaction between him and a third person, or because of a wrong

practiced by both parties on a third person. . . ." 27 Am. Jur. 2D *Equity* § 142, at 678-79 (1966).

We find the rule in *Collins v. Davis*, 68 N.C. App. 588, 315 S.E. 2d 759, *aff'd*, 312 N.C. 324, 321 S.E. 2d 892 (1984) to be controlling on the question of the applicability of the clean hands doctrine to cohabitation by parties who are not married to each other. In *Collins*, plaintiff and defendant were living together prior to plaintiff's divorce from another woman. Plaintiff alleged that he provided funds for the purchase of a house and lot to be placed in defendant's name with the understanding that if the parties later married, title would be placed in their joint names. Otherwise, the property would be sold and he would be repaid. In the absence of evidence that plaintiff provided the funds as consideration for illicit sexual intercourse, or that plaintiff had acted dishonestly or unfairly toward defendant, the court held the doctrine of clean hands to be inapplicable. The evidence with respect to cohabitation in the case before us is strikingly comparable to the evidence in *Collins*, thus we are constrained to uphold the trial court's ruling that plaintiff was not barred from relief because of his cohabitation with Deborah Norris, nothing else appearing.

Neither is the plaintiff barred from relief because of his participation with Deborah Norris in the deceptive scheme to secure a loan for the purchase. The doctrine of clean hands is only available to a party who was injured by the alleged wrongful conduct. 27 Am. Jur. 2D *Equity* § 142; *Ferguson v. Ferguson*, 55 N.C. App. 341, 285 S.E. 2d 288, *disc. rev. denied*, 306 N.C. 383, 294 S.E. 2d 207 (1982); *High v. Parks*, 42 N.C. App. 707, 257 S.E. 2d 661, *disc. rev. denied*, 298 N.C. 806, 262 S.E. 2d 1 (1979). *But cf. Hood v. Hood*, 46 N.C. App. 298, 264 S.E. 2d 814 (1980). It does not appear from the record that title was placed in Deborah's name for an illegal purpose, i.e., for the purpose of defrauding plaintiff's creditors or avoiding any lawful obligation, and we therefore find inapplicable the holdings of *Penland v. Wells*, 201 N.C. 173, 159 S.E. 423 (1931) and *Hood v. Hood*, 46 N.C. App. 298, 264 S.E. 2d 814 (1980). Although the savings and loan may have been induced to make a loan which it otherwise would not have made, it does not appear that the scheme was designed to shield the property from foreclosure in the event of nonpayment or to diminish or imperil the lender's secured position in any respect. It should also

be noted that the lender has not complained and has willingly accepted payments from the plaintiff. For the foregoing reasons, we also reject defendants' argument that the trial court should have instructed the jury on the doctrine of clean hands. This issue does not arise upon the evidence in this case.

[3]   By their last assignment of error defendants contend that the trial court erred in refusing to instruct on the doctrine of *pro tanto* resulting trust. Where a party advances only part of the payment or promises to make part of the payment a trust only results *pro tanto* in favor of that party. *See Kelly Springfield Tire Co. v. Lester*, 190 N.C. 411, 130 S.E. 45 (1925). A *pro tanto* resulting trust is created in the same manner as a resulting trust. It merely allows one who has advanced only part of the funds to recover up to the amount of his payment. As is the case with a resulting trust, these partial funds, in order to establish a *pro tanto* resulting trust, must also be advanced or promised prior to or at the time legal title passes. If a *pro tanto* resulting trust is found, then a trust arises in favor of the one making part payment commensurate with his interest. *Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982).

Defendants contend that they were entitled to an instruction on *pro tanto* resulting trust because there was evidence that Deborah Norris was obligated on the purchase money note and made fourteen payments on it from her own account. We reject this contention. Under the instructions given, the jury was permitted to find that plaintiff was entitled to a resulting trust only if they found that Perry Ray had advanced *all* the funds for the downpayment *and that he was obligated* to provide Deborah Norris with the remaining funds for the mortgage payments pursuant to the agreement of the parties at or before the time title passed. Assuming *arguendo* that there was evidence from which the jury could find that Deborah Norris subsequently made payments on the note from her own funds, the evidence was relevant only upon the question of the agreement and intent of the parties at the time legal title passed. Any such payments would not establish a *pro tanto* resulting trust because the consideration was furnished after legal title had passed.

No error.

Judges WEBB and BECTON concur.