PITT COUNTY, Plaintiff v. DEJAVUE, INC., DEJAVUE II, CHARLES LEE CUMMINGS, JR., MISTY'S, MARIE BRADSHAW HUDSON, REX HUDSON, SILVER BULLET DOLLS, INC., MATTHEW EARL FAULKNER, LINDA FAULKNER, DORA CRAWFORD FAULKNER, Defendants

No. COA06-838

(Filed 4 September 2007)

## 1. Pleadings— motion to dismiss—verification of complaint

The trial court did not err in a declaratory and injunctive relief case concerning the interpretation and enforcement of a county ordinance regulating sexually oriented businesses by denying defendant's motion to dismiss plaintiff's complaint based on it not being verified by an officer, or managing or local agent of the county as required by N.C.G.S. § 1A-1, Rule 11(d), because: (1) this case is not the type of action for which a verified complaint is required; and (2) there are no statutes requiring verification of plaintiff's complaint requesting declaratory and injunctive relief under N.C.G.S. § 153A-123.

## 2. Counties— pleading section and caption of ordinance

Plaintiff county's complaint sufficiently pleaded both the section number and caption of the pertinent amended ordinance in accordance with N.C.G.S. § 160A-179 in an action seeking declaratory and injunctive relief concerning the interpretation and enforcement of an ordinance regulating sexually oriented businesses.

## 3. Appeal and Error— preservation of issues—invited error

Defendants waived the issue as to whether the trial court applied the wrong standard when it denied their motion to dismiss plaintiff's complaint at the close of evidence where defendants expressly consented to the standard applied by the court and thus invited the alleged error of which they complain.

## 4. Constitutional Law— county ordinance—regulation of sexually oriented businesses—not ex post facto law

An amended county ordinance regulating sexually oriented businesses was not an unconstitutional ex post facto law even though it provided that all enforcement action would be based upon the effective date of the original ordinance because a retroactive civil regulatory law does not violate the ex post facto clause, and the amended ordinance was a civil regulatory law

PITT CTY. v. DEJA VUE, INC.

[185 N.C. App. 545 (2007)]

since it placed a time, place and manner restriction on the location of sexually oriented businesses and was enacted pursuant to the county's police powers.

**5. Constitutional Law— county ordinance—regulation of sexually oriented businesses—finding of fact**

In determining that a county ordinance regulating sexually oriented businesses was not content-based and thus not subject to strict constitutional scrutiny, competent evidence supported the trial court's finding that the county relied upon a variety of evidence regarding the secondary effects of sexually oriented businesses even though plaintiff did not show that members of the board of commissioners (BOC) actually viewed the documentary evidence tendered by plaintiff, because: (1) the sheriff testified that he and county legal staff began researching the 2002 ordinance approximately one year before it was adopted by the BOC, and the BOC was undoubtedly aware of the efforts of county staff on their behalf; (2) the sheriff was present at the agenda meeting at which the 2002 ordinance was reviewed by the BOC, and the sheriff was available to answer questions about the ordinance; and (3) the legislative reality is that county staff, not county commissioners, are most often the actual individuals drafting county legislation on the commissioners' behalf.

**6. Constitutional Law— county ordinance—regulation of sexually oriented businesses—content-neutral—intermediate scrutiny**

A county ordinance and amended ordinance regulating sexually oriented businesses were content-neutral, and thus subject to intermediate constitutional scrutiny, even though defendants contend individual commissioners did not personally review the research materials considered by county legal staff during drafting of the ordinance, because: (1) a zoning ordinance regulating sexually oriented businesses is content-neutral when it is unrelated to the suppression of free expression and its purpose is to eliminate undesirable secondary effects of the sexually oriented business; (2) a content-neutral ordinance is subject to intermediate scrutiny, meaning the reviewing court must consider whether the ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication; and (3) county legal staff did complete meaningful review of the secondary effects generated by sexually oriented businesses.

**7. Constitutional Law— county ordinance—regulation of sexually oriented businesses—free speech—reasonable alternative avenues of communication**

An amended county ordinance regulating sexually oriented businesses left open reasonable alternative avenues of communication for defendant businesses even though defendants emphasize that a county map identifying locations in which sexually oriented businesses were prohibited or permitted was not prepared until after the amended ordinance was enacted, and the cost of relocating is prohibitive, because: (1) the question of whether an ordinance allows for reasonable alternative avenues of communication concerns the effect of the ordinance on speech and not the process by which the ordinance was adopted; and (2) the county planning director testified that the county had approximately 124 square miles available for the development of sexually oriented businesses which was approximately 19% of the entire land area of the county.

**8. Constitutional Law— county ordinance—regulation of sexually oriented businesses—Equal Protection**

A county ordinance regulating sexually oriented businesses did not violate the Equal Protection clauses of the United States and North Carolina Constitutions even though defendant Hudson argues the amended ordinance prevents him from living within 1,320 feet of a sexually oriented business that he operates, because: (1) defendant Hudson is not treated differently than similarly situated individuals; (2) every business in noncompliance with the amended ordinance is required to come into compliance before being granted a license; and (3) every citizen who, like defendant Hudson, resides within 1,320 feet of such business will be deprived of the opportunity to continue living in such close proximity in their current residence.

Appeal by defendants from order entered on or about 21 December 2005 by Judge W. Russell Duke, Jr. in Superior Court, Pitt County. Heard in the Court of Appeals 19 February 2007.

*Pitt County Legal Department, by Janis Gallagher for plaintiff-appellee.*

*The Robinson Law Firm, P.A., by Leslie S. Robinson, for defendant-appellants Deja Vue, Inc., Deja Vue, II, Charles Lee Cummings, Jr., Silver Bullet Dolls, Inc., Matthew Earl Faulkner, Linda Faulkner and Dora Crawford Faulkner.*

*David W. Silver for defendants Misty's, Rex Hudson and Marie Hudson.*

STROUD, Judge.

This is an action for declaratory and injunctive relief filed in Superior Court, Pitt County, concerning the interpretation and enforcement of a Pitt County ordinance regulating sexually oriented businesses. Plaintiff Pitt County sought a declaratory ruling that defendants unlawfully operated unlicensed sexually oriented businesses in locations prohibited by the county ordinance, as well as temporary and permanent injunctions enjoining defendants from conducting sexually oriented business at those locations.

The parties stipulated that defendants Deja Vue, Inc., Deja Vue II[1], Misty's, and Silver Bullet Dolls, Inc. are sexually oriented businesses located in Pitt County North Carolina.[2] Defendant Mark Saied operates Deja Vue, Inc. and defendant Charles Lee Cummings, Jr. operates Deja Vue, II. Defendant Marie Bradshaw Hudson owns Misty's and defendant Rex Hudson operates Misty's. Defendants Matthew Earl Faulkner and Linda Faulkner operate Silver Bullet Dolls, Inc. in a building owned by defendant Dora Crawford Faulkner. For purposes of this opinion, we refer to defendants Deja Vue, Inc., Deja Vue II, Mark Saied, and Charles Lee Cummings, Jr. collectively as "Deja Vue." We refer to defendants Misty's, Marie Bradshaw Hudson, and Rex Hudson collectively as "Misty's" and defendants Silver Bullet Dolls, Inc., Earl Faulkner, Linda Faulkner, and Dora Crawford Faulkner collectively as "Silver Bullet."

Defendant Silver Bullet has been operating in Pitt County for more than twenty years. Defendant Misty's and defendant Deja Vue, Inc. began operating in Pitt County before 7 October 2002;[3] how-

1. Deja Vue II changed its name to "Club Vegas" after plaintiff filed its complaint.

2. The Pitt County Code defines a sexually oriented business as "an adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, massage parlor, adult motion picture theater, adult theater, escort agency, sexual encounter center, or any combination of the foregoing." Pitt Co., N.C., Code Chapter VIII, section 2.2 (2003); Pitt Co., N.C., Code Chapter VIII, section 2.2 (2005).

3. Before 7 October 2002, Pitt County did not regulate sexually oriented businesses.

ever, defendant Deja Vue II began operating after that date. Defendants have not been charged with prostitution, crimes against nature, or any violation of North Carolina obscenity law. Pitt County alleges only that defendants may not operate sexually oriented businesses in their current locations or without licenses as required by Pitt County Code.

## I. Background

On 2 October 2002, the Pitt County Board of Commissioners adopted an ordinance regulating sexually oriented businesses. The ordinance was prefaced, in part, by the following preamble:

> WHEREAS, the Board of Commissioners recognizes that <u>important and substantial governmental interests</u> provide a constitutional basis for reasonable regulation of the <u>time, place and manner</u> under which adult and sexually oriented businesses operate; and

> WHEREAS, <u>for the purpose of preventing harmful secondary impacts such as neighborhood blight, increases in crime and decreases in property value,</u> this article is adopted by the Board of Commissioners to regulate adult and sexually oriented businesses, as hereby defined, located in the County . . .; and

> WHEREAS, the board of Commissioners has determined that persons seeking to operate sexually oriented businesses shall be required to observe <u>specific location requirements</u> before they commence business.

Pitt Co., N.C., Code Preamble (2003) (emphasis added).

In section 1.1 of the ordinance, the Board of Commissioners stated its purpose, in part, as follows:

> Pitt County is committed to protecting the general welfare of the County through the enforcement of laws prohibiting obscenity, indecency, and sexual offenses. It seeks to reduce and eliminate the deleterious effects of sexually oriented businesses while preserving constitutionally protected forms of expression. <u>Pitt County finds that sexually oriented businesses in certain locations contribute to neighborhood deterioration and blight through an increase in crime and diminution of property values, among other adverse consequences, and finds that such effects are contrary to the general welfare of the County.</u>

Pitt Co., N.C., Code 1.1 (2003) (emphasis added).

**PITT CTY. v. DEJA VUE, INC.**

[185 N.C. App. 545 (2007)]

To those ends, the ordinance provided that "[i]t is unlawful for any person to operate a sexually oriented business without a valid sexually oriented business privilege[4] license approved by the Code Enforcement Officer pursuant to this article." Pitt Co., N.C., Code Chapter VIII, section 4.1 (2003). "Every sexually oriented business that is granted a license (new or renewal) shall pay to Pitt County an annual nonrefundable privilege license fee of $1,000.00[5] upon license issuance or renewal." Pitt Co., N.C., Code Chapter VIII, section 7.1 (2003).

The ordinance also contained two provisions, entitled "Overconcentration" and "Residential Proximity," regulating the places in which sexually oriented businesses could locate.

8.1. Overconcentration [sic]. No more than one (1) sexually oriented business shall be located in any one thousand three hundred and twenty (1320) foot radius (determined by a straight line measured from building to building and not by street distance). This regulation is necessary to prevent an overconcentration [sic] of sexually oriented businesses and the creation of a de facto downgrading or blighting of surrounding neighborhoods.

8.2. Residential Proximity.

8.2.(a) No sexually oriented business shall be located within a one thousand three hundred twenty (1320) foot radius (determined by a straight line measured building to building and not by street distance) of any place of worship, a school (public or private), specialty school, day-care facility, or any residential zoning districts[6] or residential properties or a lot or parcel of land on which a public playground, public swimming pool, or public park is located. Special regulation of these establishments is necessary to insure [sic] that deleterious secondary effects which can reasonably be expected to result from the inappropriate location or concentration of sexually oriented businesses and these adverse effects will not contribute to a downgrading or blighting of surrounding residential districts or certain other districts which permit residential uses.

---

4. The word "privilege" was deleted from this section by amendment in 2004.

5. The cost of license substitution or renewal was changed to $200.00 by amendment in 2004.

6. The phrase "residential zoning districts" was deleted and replaced with the phrase "a residential dwelling" by amendment in 2004.

Pitt Co., N.C., Code Chapter VIII, sections 8.1 & 8.2 (2003) (emphasis added). Defendants do not dispute that the restrictions contained in sections 8.1 and 8.2(a) may properly be classified as "time, place, and manner" restrictions for the purpose of First Amendment review. *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46, 89 L. Ed. 2d 29, 37 (1986) (stating an ordinance regulating sexually oriented businesses that circumscribes their choice as to location without banning the speech expressed therein altogether is a time, place, manner restriction).

With respect to pre-existing sexually oriented businesses, the ordinance provided that: "Any sexually oriented business lawfully operating on the date that this ordinance becomes effective, that is in violation of this article shall be deemed a nonconforming use." Pitt Co., N.C., Code Chapter VIII, section 9.1 (2003). However, the ordinance also granted a one year grace period, commonly known as the "amortization period," which provided that "[a]ny use which is determined to be nonconforming by application of the provisions of this section shall be permitted to continue for a period not to exceed one year from the date this ordinance becomes effective." Pitt Co., N.C., Code Chapter VIII, section 9.2 (2003). "Such nonconforming uses shall not be increased, enlarged, extended or altered, except that the use may be changed to a conforming use." Pitt Co., N.C., Code Chapter VIII, section 9.3 (2003). This ordinance became effective on 7 October 2002 [hereinafter 2002 Ordinance]. Pitt Co., N.C., Code Chapter VIII, section 14 (2003).

On 2 February 2004, the Pitt County Board of Commissioners adopted an ordinance entitled "Amended Ordinance Regulating Adult Establishments Sexually Oriented Businesses" [Amended Ordinance].[7] (emphasis added). The Amended Ordinance contained technical changes to the 2002 Ordinance most of which are not relevant to the case *sub judice*. These changes were made to promote consistency with a separate county-wide zoning ordinance. Except as noted by footnotes ante, provisions of the 2002 Ordinance quoted herein are identical to the Amended Ordinance.

For purposes of this appeal, we consider section 8-187 of the Amended Ordinance, which provides:

---

7. The Amended Ordinance was adopted without comment at its second reading. Meeting notes reflect that one commissioner voted not to adopt the ordinance after its first reading in December 2003 because a fellow commissioner who wished to participate in the decision was not present.

This amended Ordinance shall be in full force and effect on and after February 2, 2004 and shall replace the Ordinance which first became effective on October 7, 2002. <u>All enforcement action shall be based upon the effective date of October 7, 2002.</u>

Pitt Co., N.C., Code Chapter VII, section 8-187 (2004) (emphasis added).

Plaintiff and defendants stipulated that Pitt County adopted the Amended Ordinance pursuant to its police powers. *See* N.C. Gen. Stat. § 153A-121 (2005) (defining a county's "[g]eneral ordinance making power). Defendants Misty's applied for a sexually oriented business license as required by the Amended Ordinance, but the application was denied because the Misty's sexually oriented business is located within 1,320 feet of a residential dwelling, as are the businesses of all defendants in this matter. The remaining defendants have not applied for sexually oriented business licenses under either ordinance.

Plaintiff Pitt County sought a declaratory ruling that defendants unlawfully operated unlicensed sexually oriented businesses in locations prohibited by the Amended Ordinance, as well as temporary and permanent injunctions enjoining defendants from conducting sexually oriented business at those locations. Defendants Deja Vue and defendants Silver Bullet filed motions to dismiss plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 11, arguing that plaintiff failed to properly verify its complaint, and pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. Defendants Misty's also filed a motion to dismiss plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Pitt County Superior Court Judge W. Russell Duke, Jr. orally denied defendants' motions on 14 November 2005.

At the declaratory judgment hearing, plaintiff called two witnesses: Pitt County Sheriff Mac Manning and Pitt County Planning Director James Rhodes. Sheriff Manning testified that he has responded to numerous calls at sexually oriented businesses in Pitt County, including calls concerning assault, drunk driving, trespassing, suspicious activity, hit and run, intoxicated and disruptive behavior, loud music, and even murder. Sheriff Manning further testified that he has received general complaints from a number of homeowners who reside near sexually oriented businesses. The homeowners complained of squealing tires, beer bottles in their front yards, and trespassers. Many of these incidents occurred after 2:00 a.m., the time

at which ABC regulated bars close. All of these incidents occurred before enactment of the 2002 Ordinance. Additionally, Sheriff Manning received a complaint concerning plans to locate an adult bookstore near a local high school.

Sheriff Manning further testified that sexually oriented businesses that do not sell alcoholic beverages are not subject to ABC regulation. According to Sheriff Manning, these businesses "tend to run all night long" and present "more forms of nudity and sexually oriented type exhibitions." At least one established sexually oriented business in Pitt County gave up its alcoholic beverage license so that it would be better suited to compete with newer unregulated sexually oriented businesses locating in Pitt County.

Based on these complaints and Sheriff Manning's previous experience policing Pitt County, Sheriff Manning asked Pitt County legal staff whether the County could regulate sexually oriented businesses. Sheriff Manning and members of the legal staff "looked at studies done in other jurisdictions" and "adopt[ed]" and "incorporate[d]" the conclusions of these studies into the "ordinance building process." The publications reviewed by county staff included: (1) a University of North Carolina at Chapel Hill Institute of Government publication entitled "Regulating Sexually Oriented Businesses" and a supplement to that publication; (2) a summary of calls to law enforcement in Pitt County; (3) a summary of studies concerning sexually oriented businesses conducted in other jurisdictions; (4) Internet photos of an x-rated Super Bowl party held at Deja Vue; and (5) a letter from the ABC Board Law Enforcement Division informing Pitt County that sexually oriented businesses that turn in their alcoholic beverage licenses are no longer subject to ABC regulation. These materials were admitted into evidence at the declaratory judgment hearing.

During drafting of the 2002 Ordinance, the county staff also relied on N.C. Gen. Stat. § 160A-181.1 (2005), which provides:

(a) The General Assembly finds and determines that sexually oriented businesses can and do cause adverse secondary impacts on neighboring properties. Numerous studies that are relevant to North Carolina have found increases in crime rates and decreases in neighboring property values as a result of the location of sexually oriented businesses in inappropriate locations or from the operation of such businesses in an inappropriate manner. Reasonable local government regulation of sexually oriented businesses in order to prevent or ameliorate adverse secondary

impacts is consistent with the federal constitutional protection afforded to nonobscene but sexually explicit speech.

(b) In addition to State laws on obscenity, indecent exposure, and adult establishments, local government regulation of the location and operation of sexually oriented businesses is necessary to prevent undue adverse secondary impacts that would otherwise result from these businesses.

(emphasis added). The trial court took judicial notice of N.C. Gen. Stat. § 160A-181.1 during the hearing.

At an "agenda review meeting" preceding the Board of Commissioner's vote on the 2002 Ordinance, Sheriff Manning discussed the "basis for the ordinance" with the Commissioners and "identified the need for the ordinance."

Pitt County Planning Director James Rhodes testified that he is the Code Enforcement Officer for the Amended Ordinance. Rhodes further testified that Pitt County is a total area of 656 square miles and that, after accounting for the Amended Ordinance and the 100-year flood plain, approximately 124 square miles are available for the development of sexually oriented businesses.

At the close of plaintiff's evidence, defendants moved to dismiss arguing, in part, that the twelve-month amortization period contained in the Amended Ordinance had not expired at the time plaintiff filed its complaint. After hearing argument from both parties, Judge Duke denied defendants' motion.

Defendants presented no evidence at the declaratory judgment hearing. On 21 December 2005, Judge Duke ordered defendants to "immediately cease all operation of the[ir] sexually oriented businesses" and "permanently enjoined [defendants] from continuing to operate their sexually oriented businesses in violation of the [2004] Ordinance." In so doing, Judge Duke found that the county had relied on the documentary evidence tendered by plaintiff when it drafted the 2002 Ordinance and the Amended Ordinance. Defendants appeal.

II. N.C. Gen. Stat. § 1A-1, Rule 11 (2005).

[1] Defendants Deja Vue and defendants Silver Bullet argue that the trial court erred by denying their motion to dismiss plaintiff's complaint because the complaint was not verified by an "officer, or managing or local agent" of Pitt County "upon who[m] summons might be served" as required by N.C. Gen. Stat. § 1A-1, Rule 11(d). N.C. Gen.

Stat. § 1A-1, Rule 4(j)(5)(b) provides that a county is served only by delivering the summons to the county manager, county clerk, or any member of the board of commissioners, including that chairman. Because the county planning director verified the complaint *sub judice*, defendants Deja Vue and defendants Silver Bullet conclude that the complaint did not comply with Rule 11 and should have been dismissed. We do not consider the question of whether a county planning director may properly verify a complaint filed by a county; rather, we conclude that the action *sub judice* is not a type of action for which a verified complaint is required.

Complaints need not be verified "unless some statute requires verification as a condition to the maintenance of the action." *Levy v. Meir*, 248 N.C. 328, 329, 103 S.E.2d 288, 289 (1958) (per curiam); *see also* N.C. Gen. Stat. § 1A-1, Rule 11(a) and cmt. (2005) (stating "[e]xcept when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit" and "the only time any pleading must be verified is when some statute specifically requires it"). When the "plaintiff can maintain his action without verifying the complaint, an attempted verification . . . cannot defeat that right." *Id.*

Plaintiff filed its action pursuant to N.C. Gen. Stat. § 153A-123, entitled "[e]nforcement of ordinances" and sought equitable relief as permitted by Chapter VIII, section 15.2 of the Amended Ordinance. Defendants cite no statute, and we find no statute, requiring verification of plaintiff's complaint requesting declaratory and injunctive relief under N.C. Gen. Stat. § 153A-123. *See e.g., Animal Legal Defense Fund v. Woodley*, —— N.C. App. ——, 640 S.E.2d 777 (2007) (explaining that North Carolina Rule of Civil Procedure 65, entitled "Injunctions," is "devoid of any mention of a verified complaint requirement").

For the reasons stated above, defendants Deja Vue and defendants Silver Bullet's assignment of error is overruled.

### III. N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)

[2] Defendants Deja Vue and defendants Silver Bullet argue that the trial court erred by denying their motion to dismiss plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). In support of their argument, Defendants Deja Vue and defendants Silver Bullet contend that plaintiff failed to state a claim upon which relief may be granted because it did not plead in its complaint the

section number and caption of the county ordinance it sought to enforce. We disagree.

N.C. Gen. Stat. § 160A-179 (2005), which governs the pleading and proving of county ordinances[8] provides: "In all civil and criminal cases a [county] ordinance that has been codified in a code of ordinances adopted and issued in compliance with G.S. [153A-49] must be pleaded by both section number and caption." Here, plaintiff pled the caption of the Amended Ordinance in paragraph 12 of its complaint as follows: "Defendants are sexually·oriented businesses as defined in Pitt County Code Article VIII, entitled Sexually Oriented Business." (emphasis added). Plaintiff also pled the section number in paragraphs 14 and 16 of its complaint, alleging

14. Pursuant to Pitt County Code Article VIII section 8-174, it is unlawful for any person to operate a sexually oriented business without a sexually oriented business license.

16. Pursuant to Pitt County Code Article VII section 8-178, no sexually oriented business shall be located within a 1,320 foot radius of any place of worship, a residential dwelling, a school, specialty school, day care facility, or lot or parcel of land on which a public playground, swimming pool or park is located.

(emphasis added). Therefore, plaintiff has pled the ordinance "by both section number and caption" as required by section 160A-179. Although defendant Deja Vue voices confusion, asking "Did the plaintiff intend to enforce the first or second ordinance?," we find the answer to be clear. The Amended Ordinance is the only ordinance codified at Article VIII, section 8-178 and 8-174 of the Pitt County Code at the time plaintiff filed its complaint. Moreover, the 2002 Ordinance was codified differently at sections 4.1 and 8.2.

For the reasons stated above, defendants Deja Vue and defendants Silver Bullet's assignment of error is overruled.

IV. N.C. Gen. Stat. § 1A-1, Rule 41 (2005).

[3] Defendants Deja Vue and defendants Silver Bullet argue that the trial court erred in denying their motion to dismiss plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 41 at the close of evi-

---

8. N.C. Gen. Stat. § 153A-50 (2005). (making N.C. Gen. Stat. § 160A-179 applicable to county ordinances, providing that "[c]ounty ordinances shall be pleaded and proved under the rules and procedures of G.S. 160A-79. References to G.S. 160A-77 and G.S. 160A-78 appearing in G.S. 160A-79 are deemed, for purposes of this section, to refer to G.S. 153A-49 and G.S. 153A-48, respectively").

dence. In support of this assignment, defendants Deja Vue and defendants Silver Bullet argue that the trial court applied the wrong standard when resolving their motion to dismiss by viewing the evidence in the light most favorable to plaintiff. Defendants Deja Vue and defendants Silver Bullet also argue that plaintiff filed its complaint before expiration of the twelve-month amortization period contained in the Amended Ordinance. We disagree.

First, N.C. Gen. Stat. § 1A-1, Rule 41 permits a defendant to move for involuntary dismissal at the close of the plaintiff's evidence during a bench trial. The trial court must grant the motion when "upon the facts and the law the plaintiff has shown no right to relief." N.C. Gen. Stat. § 1A-1, Rule 41. When considering a motion to dismiss made under Rule 41(b), the trial judge must " 'evaluate the evidence without any limitations as to the inferences which the court must indulge in favor of the plaintiff's evidence on a similar motion for a directed verdict in a jury case.' " *Dealers Specialties, Inc. v. Neighborhood Housing Services, Inc.*, 305 N.C. 633, 638, 291 S.E.2d 137, 140 (1982) (quoting and adopting the rule of *Bryant v. Kelly*, 10 N.C. App. 208, 213, 178 S.E.2d 113, 116 (1970), *rev'd on other grounds*, 279 N.C. 123, 181 S.E.2d 438 (1971)). Thus, the trial judge is not required to consider the evidence in the light most favorable to the plaintiff. *Id.*

Even so, we conclude that defendants invited the alleged error of which they complain. Here, defendants Deja Vue and Silver Bullet expressly consented to the erroneous standard as follows:

The Court: All right, well I believe the Court at this point has to take all the evidence in the light most favorable to the plaintiff.

[Counsel for defendants Misty's]: I believe that's correct.

[Counsel for defendants Deja Vue and Silver Bullet]: I would do that.

(emphasis added).

Because "[a] party may not complain of an action which he induced," *Frugard v. Pritchard*, 338 N.C. 508, 512, 450 S.E.2d 744, 746 (1994), this assignment of error is overruled.

[4] Second, defendants Deja Vue and Silver Bullet argue that the trial court erred by denying their motion to dismiss because plaintiff filed its complaint before the expiration of the amortization period contained in the Amended Ordinance. Defendants Deja Vue and Silver

Bullet contend that the Amended Ordinance replaced the 2002 Ordinance in total and a new twelve-month amortization period began on 16 December 2003, the date on which Amended Ordinance became effective. They conclude that calculating the amortization period based upon the effective date of the 2002 Ordinance, which was 7 October 2002, would render the Amended Ordinance ex post facto. We disagree.

The express language of the Amended Ordinance provides that "[a]ll enforcement action shall be based upon the effective date of October 7, 2002." Therefore, 7 October 2002 is the effective date to be employed when determining whether a particular sexually oriented business is in compliance with the Amended Ordinance and for purposes of "enforcement action" the amortization period expired on 7 October 2003. Plaintiff did not file its declaratory judgment action until on or about 25 January 2005, more than one year after the expiration of the amortization period.

Article I, section 10 of the United States Constitution prohibits the states from enacting any ex post facto law. The following four types of laws are ex post facto:

"1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender."

*State v. Wiley,* 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002) (quoting *Collins v. Youngblood,* 497 U.S. 37, 42, 111 L. Ed. 2d 30, 38-39 (1990)) (emphasis omitted), *cert. denied,* 537 U.S. 1117, 154 L. Ed. 2d 795 (2003). However, "[a] retroactive civil or regulatory law . . . does not violate the ex post facto clause." *State v. Johnson,* 169 N.C. App. 301, 307, 610 S.E.2d 739, 743, *disc. rev. denied and appeal dismissed,* 359 N.C. 855, 619 S.E.2d 855 (2005); *see also State v. White,* 162 N.C. App. 183, 590 S.E.2d 448 (2004).

Here, defendants do not dispute that the Amended Ordinance is a time, place, manner restriction on the location of sexually oriented businesses. Defendants do not dispute that Pitt County enacted the Amended Ordinance pursuant to its police powers, meaning that the

ordinance was enacted to promote the health, safety, and welfare of Pitt County citizens. *See* N.C. Gen. Stat. § 153A-121 (2005) (granting counties the authority to regulate acts "detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the county"); *Maynor v. Onslow County,* 127 N.C. App. 102, 488 S.E.2d 289 (1997), *appeal dismissed,* 347 N.C. 268, 493 S.E.2d 458 (1997), *cert. denied,* 347 N.C. 400, 496 S.E.2d 385 (1997) (county ordinance which regulated the location of sexually oriented businesses for the stated purpose of promoting the health, safety and morals and general welfare of the citizenry of the county was a valid exercise of the county's police powers.). Accordingly, we conclude that the Amended Ordinance is a civil regulatory law that does not violate the ex post facto clause of the United States Constitution.

This assignment of error is overruled.

V. Defendants' Constitutional Right to Freedom of Speech

[5] Defendants Deja Vue and defendants Silver Bullet argue that the trial court erred by finding the following:

10. The County relied upon a variety of evidence regarding the secondary effects of sexually oriented businesses in the months leading up to the enactment of the statute, including:

a. Studies from other jurisdictions on the adverse impacts of sexually oriented businesses on crime rates, property values, and other adverse effects such as noise, litter, and increased phone calls;

b. Similar ordinances in other jurisdictions as well as cases addressing such ordinances;

c. Publications from the University of North Carolina at Chapel Hill's Institute of Government relating to the adverse effects of sexually oriented businesses and proper methods of regulation to combat such effects;

d. N.C. Gen. Stat. § 160-181.1

. . . .

e. Research regarding the sexually oriented businesses in operation in Pitt County at the time the Ordinance was drafted, including the number of police calls made to the businesses and complaints from local citizens about the businesses.

In support of their argument, defendants Deja Vue and defendants Silver Bullet emphasize that members of the Board of Commissioners did not actually view the above listed materials themselves; rather county staff reviewed the materials when drafting the 2002 Ordinance. Thus, defendants Deja Vue and defendants Silver Bullet conclude that the Amended Ordinance was not enacted to prevent undesirable secondary effects created by sexually oriented businesses and that the Amended Ordinance was content-based. Because content-based ordinances are subject to strict scrutiny, all defendants argue that the trial court erred by applying intermediate scrutiny when resolving their constitutional challenge. We disagree. In so doing, we consider "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Sessler v. Marsh,* 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. rev. denied,* 354 N.C. 365, 556 S.E.2d 577 (2001); *Cartin v. Harrison,* 151 N.C. App. 697, 567 S.E.2d 174, *disc. rev. denied,* 572 S.E.2d 428 (2002).

A. Findings of Fact

Defendants Deja Vue and Silver Bullet argue that the trial court erred in finding that "[t]he County relied upon a variety of evidence regarding the secondary effects of sexually oriented business" because plaintiff did not show that members of the Board of Commissioners actually viewed the documentary evidence tendered by plaintiff. We conclude that the trial court's finding was supported by competent evidence.

Sheriff Manning testified that he and county legal staff began researching the 2002 Ordinance approximately one year before it was adopted by the Board of Commissioners. During that time, Sheriff Manning and county staff considered "studies done in other jurisdictions" and "adopt[ed]" and "incorporate[d]" the conclusions of those studies into the "ordinance building process." Sheriff Manning compiled a list of service calls related to Pitt County sexually oriented businesses. He also spoke with sexually oriented business proprietors and members of the ABC Board concerning the effect of new sexually oriented businesses choosing not to obtain alcoholic beverage licenses. Finally, Sheriff Manning accumulated a list of general complaints from residents living near sexually oriented businesses in Pitt County.

From this evidence, and our review of the record in total, we conclude that the Pitt County Board of Commissioners was un-

**PITT CTY. v. DEJA VUE, INC.**

[185 N.C. App. 545 (2007)]

doubtedly aware of the efforts of county staff on their behalf. Moreover, Sheriff Manning was present at the Agenda Meeting at which the 2002 Ordinance was reviewed by commissioners. At that time, Sheriff Manning was available to answer questions about the ordinance. In fact, Sheriff Manning testified that he "discussed the basis for the ordinance" with the commissioners and "identified the need for the ordinance."

We hold that plaintiff presented competent evidence from which the trial court could find "[t]he County relied upon a variety of evidence regarding the secondary effects of sexually oriented business," including the documentary evidence tendered by plaintiff at the declaratory judgment hearing. In so doing, we acknowledge the "legislative reality" that county legal staff, not county commissioners, are most often the actual individuals drafting county legislation on the commissioner's behalf. *See e.g. Lakeland Lounge v. Jackson*, 973 F.3d 1255, 1258 (5th Cir. 1992) (noting that the city council "could properly place some reliance upon others to do research" concerning the secondary effects of sexually oriented business in their municipality), *cert. denied*, 507 U.S. 1030, 123 L. Ed. 2d 469 (1993).

This assignment of error is overruled.

B. Conclusions of Law

This Court reviews a trial court's conclusions of law *de novo*. *Luna v. Div. of Soc. Servs.*, 162 N.C. App. 1, 4, 589 S.E.2d 917, 919 (2004).

1. Content-neutral vs. content-based

[6] Defendants argue that the trial court erred by concluding that the Amended Ordinance was content-neutral, and therefore subject to intermediate constitutional scrutiny, because individual commissioners did not personally review the research materials considered by county legal staff during drafting of the ordinance. We disagree.

A zoning ordinance regulating sexually oriented businesses is content-neutral, when it is "unrelated to the suppression of free expression" and its purpose is to eliminate undesirable secondary effects of the sexual oriented business. *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986). "Put another way, the ordinance does not attempt to regulate the primary effects of the expression, i.e., the effect on the audience of watching nude erotic dancing, but rather the secondary effects, such as the impacts on public health, safety,

and welfare, which" the United States Supreme Court has "previously recognized are 'caused by the presence of even one such establishment.'" *Erie v. Pap's A.M.*, 529 U.S. 277, 291, 146 L. Ed. 2d 265, 279 (2000).[9] A content-neutral ordinance is subject to intermediate scrutiny, meaning the reviewing court must consider "whether the . . . ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50, 89 L. Ed. 2d at 39.

In *Renton*, the United States Supreme Court "specifically refused to set . . . a high bar for municipalities that want to address merely the secondary effects of protected speech." *L.A. v. Alameda Books Inc.*, 535 U.S. 425, 438, 152 L. Ed. 2d 670, 683 (2002) (citing *Renton*, 475 U.S. at 47-48, 50, 89 L. Ed. 2d 29). The Court held that "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a .connection between speech and a substantial, independent government interest." *Id.* (quoting *Renton*, 475 U.S. at 51-52, 89 L. Ed. 2d at 40.) Relevant evidence may include the secondary effects of sexually oriented businesses in other communities. *Renton*, 475 U.S. at 51-52, 89 L. Ed. 2d at 40.

In *Lakeland Lounge v. Jackson*, the United States Court of Appeals for the Fifth Circuit considered a similar constitutional challenge to a sexually oriented business ordinance. *Lakeland Lounge*, 973 F.3d 1255. In *Lakeland*, a business regulated by the ordinance challenged its constitutionality, arguing, in part, that there was "no testimony that the members of the city council ever looked at the studies about secondary effects or that they received any summary of those studies from their staff." *Id.* at 1258. Considering the question, the Fifth Circuit "perceive[d] no constitutional requirement that the council members personally physically review the studies of secondary effects," and concluded that "such a holding would fly in the face of legislative reality." *Id.*

We are persuaded by the reasoning of the Fifth Circuit. As explained above, the Board of Commissioners relied upon the research and conclusions of Pitt County legal staff who drafted the ordinance on their behalf. The research and drafting process was carried out by multiple county employees over the course of a year. Sheriff Manning was present at the Board of Commissioner's Agenda Meeting preced-

---

9. The North Carolina General Assembly has also made a legislative finding "that sexually oriented businesses can and do cause adverse secondary impacts on neighboring properties," including "increases in crime rates and decreases in neighboring property values." N.C. Gen. Stat. § 160A-181.1(a).

ing adoption of the 2002 Ordinance to answer questions about the ordinance, "discuss[] the basis for the ordinance," and "identif[y] the need for the ordinance."

While the best practice would be for each commissioner personally to fully review evidence of secondary effects and for the county to document that the review occurred, we do not believe that the omission in this case transformed the 2002 Ordinance and the Amended Ordinance into content-based regulations. In so doing, we emphasize that county legal staff did, in fact, complete meaningful review of the secondary effects generated by sexually oriented businesses.

For the reasons stated above, we hold that the trial court did not err by concluding that the Amended Ordinance are content-neutral. Accordingly, the trial court properly subjected the Amended Ordinance to intermediate scrutiny when resolving defendants' constitutional challenge.

This assignment of error is overruled.

2. Reasonable Alternative Avenues of Communication

[7] Defendants Deja Vue and Silver Bullet argue that the trial court erred by concluding that the Amended Ordinance left open "reasonable alternative avenues of communication." In support of their argument, defendants Deja Vue and Silver Bullet emphasize that a county map identifying locations in which sexually oriented businesses were prohibited or permitted was not prepared until after the Amended Ordinance was enacted; thus, the map was not considered by the Board of Commissioners when adopting the ordinance. Defendants further emphasize that the cost of relocating, including the cost of improving an available site and constructing a building thereon, is prohibitive.

As explained above, intermediate scrutiny requires the reviewing court to consider "whether the . . . ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50, 89 L. Ed. 2d at 39. The question of whether an ordinance "allows for reasonable alternative avenues of communication" concerns the effect of the ordinance on speech; not the process by which the ordinance was adopted. Thus, to the extent defendants Deja Vue and Silver Bullet argue that there are not "reasonable alternative avenues for commu-

nication" because the Board of Commissioners did not review the subsequently created zoning map, this argument is without merit.

With respect to defendants Deja Vue and defendants Silver Bullet's argument that locations in which they may operate sexually oriented business under the Amended Ordinance are not commercially viable, the United States Supreme Court rejected a similar argument in *Renton*. In *Renton*, the ordinance permitted development of sexually oriented business on approximately 520 acres or five percent of the entire land area of the municipality. *Renton*, 475 U.S. at 53, 89 L. Ed. 2d at 41. The respondents argued "that some of the land [was] . . . already occupied by existing businesses, that 'practically none' of the undeveloped land [was] currently for sale or lease, and that in general there [were] no 'commercially viable' adult theater sites within the 520 acres left open by the Renton ordinance." *Id*. The United States Supreme Court held

> [t]hat respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation. . . . In our view, the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city, and the ordinance before us easily meets this requirement.

*Id*. (emphasis added).

Here, Pitt County Planning Director James Rhodes testified that Pitt County is a total area of 656 square miles and that, after accounting for the Amended Ordinance and the 100-year flood plain, approximately 124 square miles are available for the development of sexually oriented businesses. This is approximately nineteen percent of the entire land area of Pitt County. We conclude that the Amended Ordinance affords defendants Deja Vue and defendants Silver Bullet a reasonable opportunity to open and operate sexually oriented businesses within these 124 square miles of Pitt County.

For the reasons stated above, this assignment of error is overruled.

V. Defendant Rex Hudson's Constitutional Right to Equal Protection

[8] Defendant Rex Hudson argues that the trial court erred by concluding that the Amended Ordinance does not violate the Equal Protection clauses of the United States and North Carolina Consti-

tutions. In support of his argument, defendant Hudson argues that the Amended Ordinance prevents him from living within 1,320 feet of Misty's. We disagree.

"[T]o state an equal protection claim, a claimant must allege (1) the government (2) arbitrarily (3) treated them differently (4) than those similarly situated." *Lea v. Grier*, 156 N.C. App. 503, 509, 577 S.E.2d 411, 416 (2003). Here, defendant Hudson is not treated differently than other similarly situated individuals. Every business in noncompliance with the Amended Ordinance is required to come into compliance before being granted a license. Correspondingly, every citizen who, like defendant Hudson, resides within 1,320 feet of such a business will be deprived of the opportunity to continue living in such close proximity in their current residence. Accordingly, we conclude that the Amended Ordinance does not violate defendant Hudson's right to Equal Protection. In so doing, we note that defendant Hudson cites no substantive legal authority in support of his argument.

For the reasons stated above, this assignment of error is overruled.

## VI. Conclusion

For the reasons stated above we hold that the trial court did not err by denying defendants' motions to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rules 11 and 12(b)(6). Plaintiff pled the section number and caption of Pitt County Code as required by N.C. Gen. Stat. § 160A-179 and plaintiff's request for declaratory and injunctive relief filed pursuant to N.C. Gen. Stat. § 153A-123 is not a type of action for which a verified complaint is required. We further hold that the trial court did not err in denying defendants' motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 41. The twelve month amortization period expired more than one year before plaintiff filed its complaint and defendants Deja Vue and Silver Bullet "may not complain" of alleged error resulting from the trial court's consideration of the evidence in the light most favorable to plaintiff because defendants invited the trial court's action.

With respect to defendants' constitutional arguments, we hold that competent evidence supported the trial court's finding that the county "relied upon a variety of evidence regarding the secondary effects of sexually oriented businesses" when drafting the 2002 Ordinance. We further hold that the trial court properly concluded that the 2002 Ordinance and 2004 Ordinance are content-neutral and

properly applied intermediate scrutiny to defendants' First Amendment constitutional challenge. Moreover, the trial court properly determined that the 2004 Ordinance left "reasonable alternative avenues of communication" available in nearly nineteen percent of Pitt County. We do not reach defendants' remaining arguments, concerning the ability of either ordinance to withstand strict constitutional scrutiny.

Finally, the trial court properly denied defendant Hudson's Equal Protection claim. This argument is meritless on its face.

Accordingly, we affirm the order entered in Superior Court, Pitt County on or about 21 December 2005 permanently enjoining defendants from continuing to operate their sexually oriented businesses in violation of the Amended Ordinance.

AFFIRMED.

Chief Judge MARTIN and Judge BRYANT concur.